727 So.2d 236 (1998)
Cleo Douglas LeCROY, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Cleo Douglas LeCroy, Appellant,
v.
State of Florida, Appellee.
Nos. 76,144, 89,995.
Supreme Court of Florida.
December 24, 1998.
Rehearing Denied March 2, 1999.
*237 Stephen M. Kissinger, Chief Assistant CCR, Peter Warren Kenny, Assistant CCR, and Julie D. Naylor, Assistant CCR, for the Southern Region, Miami, for Petitioner/Appellant.
Robert A. Butterworth, Attorney General, Sara D. Baggett and Celia A. Terenzio, Assistant Attorneys General, West Palm Beach, for Respondent/Appellee.
PER CURIAM.
Cleo LeCroy appeals an order of the trial court denying relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const. We affirm the denial of rule 3.850 relief, and we deny the writ.
The facts of these murders are set out fully in our opinion on direct appeal. See LeCroy v. State, 533 So.2d 750 (Fla.1988). John and Gail Hardeman were camping in a remote area of Palm Beach County on January 4, 1981, when LeCroy robbed and killed John and, because Gail happened on the scene, robbed and killed her also. LeCroy and his brother, Jon, were indicted for the murders and tried separately. Jon was acquitted and LeCroy was convicted of two counts of first-degree murder (felony murder for killing John, and premeditated murder for killing Gail) and two counts of robbery with a firearm. The jury recommended life for the murder of John and death by a seven-to-five vote for the murder of Gail. The court sentenced LeCroy to life imprisonment for the murder of John and death for the murder of Gail based on three aggravating circumstances,[1] two statutory mitigating circumstances,[2] and no nonstatutory mitigating circumstances. The court sentenced LeCroy to consecutive thirty-year terms on the robbery counts, with consecutive three-year mandatory minimum terms for use of a firearm. We affirmed the convictions and sentences after determining that LeCroy's age at the time of the crime, i.e., seventeen years old, did not require reversal of the death sentence.
Before LeCroy filed any postconviction motions, Governor Martinez signed a death warrant on May 17, 1990, and LeCroy filed a petition for a writ of habeas corpus in this Court. We granted a stay of execution to allow LeCroy to seek postconviction relief. He filed a rule 3.850 motion in the trial court in December 1990 and at the same time filed an amended habeas petition in this Court. The trial court denied the rule 3.850 motion without an evidentiary hearing, and LeCroy now appeals that denial.[3] LeCroy also seeks *238 relief under his pending habeas petition.[4]

I. RULE 3.850 MOTION
LeCroy first claims that the trial court erred in summarily denying rule 3.850 relief without attaching portions of the record to its order. This issue has already been decided adversely to the defendant. See Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993) ("To support summary denial without a hearing, a trial court must either state its rationale in its decision or attach those specific parts of the record that refute each claim presented in the motion."). The trial court stated its rationale for denying each claim. We find no error.
LeCroy next claims that the trial court erred in failing to grant an evidentiary hearing on three allegations: violations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), misleading evidence, and ineffective assistance of trial counsel.[5] We disagree. The trial court addressed this claim at length and concluded:
The burden is on the Defendant to make at least a prima facie showing that individually or cumulatively this "evidence" would have, within a reasonable probability, changed the outcome of his trial. His speculation and conjecture about what the letters and notes and opinions and cryptic references may suggest is not sufficient to warrant an evidentiary hearing, much less relief. The evidence in this case was overwhelming. The Defendant not only confessed to killing the Hardemans to the police, but he confessed to Carol Hundley and Roger Slora. A plethora of physical and circumstantial evidence corroborated those confessions and further established the Defendant's guilt. Based on the wealth of evidence against him, there is no reasonable probability that his conviction and sentence of death would have been different had the State disclosed or defense counsel discovered the evidence alleged by Defendant in this claim.
The trial court properly applied the law governing the withholding of evidence under *239 Brady,[6] the use of misleading evidence under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972),[7] and ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[8] We find no error.
LeCroy next claims that the trial court erred in failing to grant an evidentiary hearing on his claim that trial counsel was ineffective in failing to investigate and present mitigation.[9] We disagree. The standard for determining whether an evidentiary hearing is required on an ineffectiveness claim is as follows:
A motion for postconviction relief can be denied without an evidentiary hearing when the motion and the record conclusively demonstrate that the movant is entitled to no relief. A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant. The test for determining whether counsel has been ineffective was established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and is set forth in our opinion in Maxwell v. Wainwright[, 490 So.2d 927 (Fla.1986)]:
A claim of ineffective assistance of counsel, to be considered meritorious, must include two general components. First, a claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Kennedy v. State, 547 So.2d 912, 913-14 (Fla. 1989) (citations omitted). In the present case, the trial court addressed this claim at length and concluded:
[T]his Court finds that the Defendant has failed to make even a prima facie showing of prejudice which would warrant an evidentiary hearing, much less relief. Most of the allegations made by the Defendant were wholly conclusory without any basis in fact. Over and over again, the Defendant claimed that a wealth of evidence was available that defense counsel should have presented; yet, in many circumstances, the Defendant failed to detail the nature and/or source of that evidence. Nor has the Defendant come forward with proof of any additional evidence that counsel failed to discover.
As the Defendant conceded, defense counsel presented the testimony of numerous family members that the Defendant was "a nice boy from a nice family." Now, without affidavits or other proof, the Defendant claimed there was a plethora of evidence available to show that his family members were abusive and neglectful....
This Court finds that the Defendant has failed to plead specific facts which would *240 warrant an evidentiary hearing. Even were his conclusory allegations sufficient, this Court finds that the Defendant has failed to "demonstrate a deficiency on the part of counsel which is detrimental to [him]." Counsel had the Defendant evaluated pretrial for sanity and competency by Drs. Romanos and Silversmith, and by Susan LaFehr, the jail psychologist. Counsel then had those same experts appointed to evaluate the Defendant for penalty phase mental mitigation. In addition, he had Susan LaFehr and a private investigator appointed for the penalty phase in general. This Court finds, contrary to the Defendant's assertion that Ms. LaFehr was provided with significant background material upon which to make a competent mental health evaluation. Moreover, this Court finds significant the trial judge's endorsement during the trial of Ms. LaFehr as a competent mental health expert.
. . . .
As for that evidence sufficiently detailed by the Defendant which he claimed should have been admitted, this Court finds that such evidence would not have, within a reasonable probability, had an effect on the sentence. The Defendant committed a brutal double murder, but received only one death recommendation and sentence. Besides the fact that he committed these murders during the commission of a robbery, the jury specifically found that he premeditated the murder of Gail Hardeman. Such a finding was undoubtedly based on the Defendant's own confession that he killed Gail Hardeman to eliminate her as a witness to her husband's murder. The three aggravating factors in this case are very strong. Weighed against these aggravators was substantial evidence of the Defendant's youth and immaturity, his lack of a significant prior history or criminal activity, and other allegedly redeeming qualities. Yet, despite this mitigation, the jury still recommended death for the murder of Gail Hardeman, and this court still imposed a sentence of death. Given the circumstances of this murder, and the weight of the aggravating factors, there is no reasonable probability that the recommendation or sentence would have been different had counsel presented what little evidence is detailed by Defendant.
The record shows that the trial court properly applied the law. We find no error.
LeCroy claims that trial counsel was ineffective in the guilt phase in a number of ways.[10] The trial court addressed this claim at length and concluded:
This Court finds that the Defendant has failed to establish a prima facie case for relief. "Many of these claims are exactly the type of hindsight second-guessing that Strickland condemns, and even those matters asserted as significant omissions would have been mere exercises in futility, with no legal basis." Phillips v. State, 608 So.2d 778, 782 (Fla.1992). For example, there would have been no legal basis to admit Jon's polygraph results; hearsay statements like those in Jon's letter to his father or those overheard by Ellett; evidence of John Hardeman's financial status and character; or the lack of charges against Detective Welty, where the State informed trial counsel prior to trial that it was not going to prosecute Welty.
Numerous other allegations of deficient conduct were nothing more than conclusory claims that "other" unspecified evidence should have been developed, or was available and should have been used. For example, the Defendant faulted counsel for failing to hire a forensic communications expert to test the accuracy of the State's transcription of his taped confessions. Yet, the Defendant presented nothing to show that the tapes were, in fact, mistranscribed or not authentic.... "A defendant may not simply file a motion for *241 postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant." Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). The Defendant has failed to satisfy his burden.
Singularly or cumulatively, the allegations of deficient conduct that are sufficiently pled, even if taken as true, would not have, within a reasonable probability, affected the outcome of this case. As noted previously, the quality and quantity of evidence presented by the State simply would not have been undermined even if defense counsel had presented the evidence the Defendant claimed he should have presented.
The trial court properly applied the law. We find no error.
LeCroy alleges that his attorney was ineffective in failing to sufficiently question the venire about mental mitigation and the death penalty, and that the trial court erred in failing to grant an evidentiary hearing on this claim. We disagree. The trial court addressed this claim as follows:
[T]he Defendant claimed ... that trial counsel rendered ineffective assistance by failing to question the venire about "their understanding of mental illness and how that relates to mitigation and their views on the death penalty." Since the Defendant failed to allege, much less show, how trial counsel's failure to question the jurors on these subjects prejudiced him, this claim is denied as legally insufficient.
We find no error. We find the remainder of LeCroy's rule 3.850 claims to be procedurally barred[11] or without merit.[12]

II. HABEAS CORPUS
LeCroy claims that appellate counsel should have raised the fact that LeCroy's jury was selected according to a special districting plan that was ruled racially discriminatory in Spencer v. State, 545 So.2d 1352 (Fla.1989). The record shows, however, that LeCroy did not object on this basis at trial. This issue has already been decided adversely to the defendant. Nelms v. State, 596 So.2d 441 (Fla.1992).
LeCroy claims that appellate counsel was ineffective for failing to raise the fact that the judge told the jury that if they did not reach a timely verdict they would be locked up. We disagree. At the close of the State's case-in-chief in the guilt phase, the parties agreed to forego sequestration, and the court commented to counsel for both sides:
I am going to call in the jury and I am going to mention to them the reason we are doing it is to avoid an overnight sequestration, but I am going to tell them that nobody is rushing them to a judgment. They are to take all of the time they want. The case is important to the State and to the Defense and there is a lot at stake there and I will ask them to be patient because they have been very patient, very attentive.
Neither side objected. The court subsequently commented to the jury:
Then, I intend to recess for the day and come back the next morning, at which time I will read you the instructions.
Now, the reason why I am telling you this is that it will become obvious.
Under Florida law, if a jury is required to go into an overnight recess after the deliberations have begun, under Florida law I am required to lock you up in a hotel, not lock you up but keep you sequestered in a hotel where you can't separate, and with the permission of the State and the Defense we have agreed to avoid that possibility but it will take me about forty-five minutes to read the charges to you Friday morning. And if you come in at 9:00 o'clock, you will have the case by 10:00 and you can begin your deliberations at 10:00 o'clock and go to whenever.

*242 Now, by telling you about this sequestration, I don't mean for one moment to urge you to rush to judgment. We all want you to take your time, consider the evidence, weigh it and analyze it, apply it to the law that I gave you, because this case is important to the State and it is important to the Defense and the stakes are very high. I don't think I have to tell you about that.
The record shows that the court's reference to locking up the jury was innocuous when placed in context. We find no merit to this claim.
LeCroy next claims that appellate counsel was ineffective for failing to raise the trial court's refusal to let LeCroy present as mitigating evidence the American Bar Association's position concerning the age of capital defendants. We disagree. See, e.g., Johnson v. State, 660 So.2d 637, 646 (Fla. 1995) (mitigating evidence must be "relevant to the defendant's character or record, or to the circumstances of the offense"). We find no merit to this claim. We find the remainder of LeCroy's habeas claims to be without merit.[13]
Based on the foregoing, we affirm the denial of LeCroy's rule 3.850 motion, and we deny his petition for writ of habeas corpus.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
ANSTEAD, Justice, concurring in part and dissenting in part.
I cannot agree with the trial court's summary denial of relief without an evidentiary hearing on this seventeen-year-old defendant's penalty phase ineffective assistance of counsel claim raised in an initial motion for postconviction relief.[14] Ironically, we have just recently reversed a trial court's summary denial of a postconviction motion involving virtually identical allegations of neglected mental mitigation and remanded for an evidentiary hearing. Rivera v. State, 717 So.2d 477, 485 (Fla.1998) ("[W]e agree with Rivera that he warrants an evidentiary hearing on his claim of penalty phase ineffective assistance of counsel."). Indeed, if the Rivera case is distinguishable, it would be because the circumstances here are more compelling.
The summary denial is especially disturbing because the sentencing jury here, even without the extensive mitigation asserted in the postconviction petition, was but one vote away from recommending a life sentence for the seventeen-year-old defendant, and this was defendant's first motion for postconviction relief. See Mordenti v. State, 711 So.2d 30, 33 (Fla.1998) (Wells, J., concurring) (advocating mandatory evidentiary hearing for all initial postconviction claims in death cases). We have consistently held that a claim of ineffective assistance of counsel usually requires resolution by an evidentiary hearing where the defendant alleges sufficient disputed issues of fact. See Mordenti; Maharaj v. State, 684 So.2d 726 (Fla.1996); Hoffman v. State, 571 So.2d 449 (Fla.1990); Gorham v. State, 521 So.2d 1067 (Fla.1988).

Lack of Evidentiary Hearing
The trial court here patently erred in ruling on the motion as if the defendant had the burden of offering proof before an evidentiary hearing is conducted. For example, the trial court states in an order drafted by the State: "Now, without affidavits or other proof, the defendant claimed [sic] there was a plethora of evidence available to show that his family members were abusive and neglectful." (Emphasis supplied.) The court's statement erroneously places a burden on the defendant to not only present sufficient allegations to merit a hearing in his motion, but also to present "affidavits or other proof." This conclusion not only is inconsistent with the requirements in rule 3.850, but contrary to our holding in Valle v. State, 705 So.2d 1331, 1334 (Fla.1997) ("[N]othing in the rule requires the movant to attach an affidavit *243 or authorizes a trial court to deny the motion on the basis of a movant's failure to do so."). Under the explicit provisions of our rule for post-conviction relief the motion is to be limited to concise allegations of claims, and the proof is to be presented at an evidentiary hearing. Rule 3.850 mandates that there be a "brief statement of the facts" relied upon to support a defendant's claims. The trial court erred as a matter of law in requiring the proof before the hearing.
In addition, the trial court violated the provisions of the rule which mandate an evidentiary hearing unless the motion or the record "conclusively" demonstrates no legal basis for relief. In such case, the court must specifically identify the legal inadequacy of the claim or those portions of the record that "conclusively" demonstrate the invalidity of the claim must be attached to the order denying relief. For example, we held in Hoffman v. State, 571 So.2d 449, 450 (Fla. 1990):
Without reaching the merits of any of these claims, we nevertheless believe that a hearing is required under rule 3.850. In its summary order, the trial court stated no rationale for its rejection of the present motion. It failed to attach to its order the portion or portions of the record conclusively showing that relief is not required and failed to find that the allegations were inadequate or procedurally barred.
The trial court here identified no legal inadequacies in the motion and attached no portions of the record to the order.
Indeed, it appears that the trial court erroneously analyzed and resolved the case as if an adversary evidentiary hearing had been conducted. For example, the trial court erroneously speculates and postulates, without ever hearing evidence on the issue, that trial counsel acted in certain ways for strategic reasons. This patently erroneous approach is repeated throughout the order.

Constitutional Standard of Review
In Strickland, the Court emphasized that reviewing courts are not bound by the findings of the trial court in an ineffective counsel claim because "[i]neffectiveness is not a question of `basic, primary, or historical fac[t].'" 466 U.S. at 668, 104 S.Ct. 2052 (quoting Townsend v. Sain, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). Instead, the Court stated unequivocally that such a claim "is a mixed question of law and fact." Id. at 698, 104 S.Ct. 2052. Thus, the reviewing court "independently reweighs" the evidence to determine whether the claim is valid. Id. at 695, 104 S.Ct. 2052 (emphasis supplied). In other words, the appellate court has an obligation to conduct a "plenary review." Baxter v. Thomas, 45 F.3d 1501, 1512-13 (11th Cir.1995), quoted in Rose v. State, 675 So.2d at 571. The standard would seem especially appropriate here, where the original trial and sentencing judge was deceased and a successor judge presided over the postconviction proceedings. Obviously, the successor judge was in no better position than this Court to evaluate appellant's claims without an evidentiary hearing.

Merits of LeCroy's Ineffective Assistance Claim
Strickland mandates that the trial court conduct a two-prong test to determine whether the "sentence resulted from a breakdown in the adversary process that renders the result unreliable." 466 U.S. at 687, 104 S.Ct. 2052. The first prong requires a showing of deficient performance and must identify the "acts or omissions of counsel" alleged to be unreasonable. Id. at 690, 104 S.Ct. 2052. The court then must determine after an evidentiary hearing, and in view of all the circumstances, whether the "acts or omissions were outside the wide range of professionally competent assistance." Id. A critical threshold question under this prong is whether counsel reasonably investigated the appellant's background.
Attorneys have the absolute threshold duty to conduct an "investigation of the defendant's background, for possible mitigating evidence." Porter v. Singletary, 14 F.3d 554, 557 (11th Cir.1994). If it is demonstrated that an investigation has been conducted, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. The underlying rationale is that even highly competent attorneys will disagree on trial strategy. However, where there is little or no investigation, *244 the court may conclude that the omission was a substantial oversight, rather than legitimate trial strategy. See Rose, 675 So.2d at 572-73 (finding counsel's penalty phase performance deficient because it was "neither informed nor strategic," involved "a strategy which even he believed to be ill-conceived," and entailed "no investigation of options or meaningful choice").
LeCroy alleges that trial counsel did not investigate and present evidence to the sentencing jury of LeCroy's personal history and particularly, his history of severe mental and emotional problems. Clearly, these allegations of substantial but omitted mental health evidence appear to be LeCroy's strongest claim. LeCroy alleges in great detail that trial counsel was ineffective because he failed to investigate and present mitigating evidence on current and past mental and emotional health, diminished capacity at the time of the offense, and past child abuse. LeCroy has presented six matters upon which he claims counsel was ineffective due to failure to present evidence: (1) his immaturity, learning disability, emotional disturbance, compulsivity, indecisiveness, and insecurity, which he says could have been presented through the testimony of Drs. Romanos and Silversmith and through school records; (2) his adjustment to jail; (3) his diminished level of psychological functioning at the time of the offense; (4) his brother's guilt; (5) his poor and abusive childhood; and (6) his mental instability, as well as that of his family members, during the search for the victims.
Counsel allegedly did not present evidence of LeCroy's learning disability, low mental age, and emotional problems, all of which LeCroy argues were available through medical and school records. LeCroy also contends that counsel failed to investigate and present evidence about his poor and abusive upbringing. For example, LeCroy argues that counsel did not utilize family members and neighbors who could have testified about his childhood as a neglected "runt" who was severely abused and exhibited self-destructive and aberrant behavior early on.
Courts have consistently held that, if substantiated, this type of evidence is particularly compelling in any determination of whether the failure to investigate and present such evidence would prejudice a capital defendant. See Middleton v. Dugger, 849 F.2d 491, 495 (11th Cir.1988) (emphasizing that evidence of a psychological problem "has the potential to totally change the evidentiary picture by altering the causal relationship that can exist between mental illness and homicidal behavior"); see also Turpin v. Christenson, 269 Ga. 226, 497 S.E.2d 216, 225 (Ga.1998) (finding that defendant's anxiety and obsessive-compulsive disorders would have likely refuted prosecution's arguments about his culpability). Like these courts, this Court has consistently emphasized that "severe mental disturbance is a mitigating factor of the most weighty order." Rose, 675 So.2d at 573; see Rivera, 717 So.2d at 485; see also Hildwin v. Dugger, 654 So.2d 107, 110 (Fla.1995); Santos v. State, 629 So.2d 838, 840 (Fla.1994). For example, in Cherry v. State, 659 So.2d 1069, 1074 (Fla.1995), we found that allegations of the defendant's poor and abusive background, in conjunction with his mental defects, not investigated or presented by counsel, were cumulatively sufficient to require an evidentiary hearing.
The severe mental and emotional problems detailed by LeCroy are almost identical to the evidence cited as warranting relief in these cases. Regardless of the ultimate resolution of this issue on the merits after a proper hearing, LeCroy has clearly presented sufficient allegations to merit an evidentiary hearing. Rivera; Cherry.

Prejudice
The second prong of the Strickland analysis requires the court to decide whether counsel's errors prejudiced the defendant. To that end, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The trial court must decide if the deficiency "so affected" the trial in terms of fairness that "confidence in the outcome is undermined." Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). The defendant's allegations should be considered cumulatively in the determination. Harvey v. Dugger, 656 So.2d 1253, 1257 (Fla.1995). *245 Further, the trial court must consider the claim in light of all evidence, Strickland, 466 U.S. at 695, 104 S.Ct. 2052, and determine which evidence was affected by the errors and the degree thereof. Id. at 695-96, 104 S.Ct. 2052.
As outlined above, we have already held in numerous cases that the failure to investigate and present substantial evidence of mental mitigation and childhood abuse is the kind of omission most likely to prejudice a defendant during penalty phase proceedings. This Court has also expressly noted that the level of confidence in the jury verdict is a proper factor, for example, in cases where the jury was divided or deadlocked. Rose, 675 So.2d at 574. Importantly, as noted earlier, the jury recommended death for the seventeen-year-old LeCroy by the slimmest legal margin possible, a seven-to-five vote, even without being informed of the substantial mitigation outlined in the postconviction motion. This obviously magnifies the significance of LeCroy's contentions because any additional mitigation would have changed the qualitative calculus and might have changed one or more of the jurors' votes, thus resulting in a recommended life sentence. See Patten v. State, 467 So.2d 975, 980 (Fla.1985) (explaining that "if seven jurors do not vote to recommend death, then the recommendation is life imprisonment"). Again, however, this analysis depends upon the evidence presented at an evidentiary hearing. Rivera.
KOGAN, J., concurs.
NOTES
[1] The court found the following aggravating circumstances: (1) that LeCroy had a prior conviction for another capital felony (i.e., the contemporaneous murder of John); (2) the murder was committed in the course of a robbery; and (3) the murder was committed to avoid arrest.
[2] The court found the following statutory mitigating circumstances: (1) LeCroy had no significant prior criminal history; and (2) LeCroy was only seventeen years old at the time of the crime.
[3] LeCroy raises sixteen issues, claiming error on the following points: (1) failure to attach portions of the record to the order denying relief; (2) failure to grant an evidentiary hearing concerning Brady violations, misleading evidence, and ineffective assistance of trial counsel; (3) failure to hold an evidentiary hearing concerning trial counsel's ineffectiveness in investigating and presenting mitigation; (4) failure to hold an evidentiary hearing concerning trial counsel's ineffectiveness in the guilt phase; (5) ineffectiveness of trial counsel in questioning the members of the venire concerning their views on the death penalty and mental illness; (6) failure to allow defense counsel to poll the jury; (7) the trial court failed to recognize mitigation; (8) the death penalty is unconstitutional; (9) the record on appeal contained omissions and misnumbered pages; (10) the exclusion of testimony concerning Jon LeCroy's role in the crimes; (11) prosecutorial misconduct; (12) gruesome photos; (13) no limiting instructions for the aggravating circumstances; (14) the cold, calculated, and premeditated aggravating circumstance is vague; (15) the jury was given the wrong standard for judging expert testimony; (16) procedural and substantive trial errors.
[4] LeCroy raises six issues, claiming error on the following points: (1) ineffective assistance of appellate counsel ("IAAC") for failing to raise an improper districting plan for selecting jurors; (2) IAAC for failing to raise the fact that the trial court told the jury that if they did not return a timely verdict they would be locked up; (3) IAAC for failing to raise the trial court's refusing to let LeCroy raise mitigation; (4) IAAC for failing to raise the trial court's refusal to recognize mitigation that was presented; (5) exclusion of testimony concerning admissions of the codefendant; (6) IAAC for failing to raise misleading instructions.
[5] In this claim, LeCroy made a number of allegations including the following: The State knew that witness Slora had read police reports concerning the crime but nevertheless the State presented his testimony, vouched for his credibility, and argued that he could only have learned the details from the murderer; the State withheld evidence that it had agreed to help Slora in exchange for his testimony; the State withheld a letter the prosecutor wrote to Florida State Prison during the trial, requesting that informant Swanson be transferred from the county jail to a state facility so that he could earn gain time while he awaited LeCroy's trial; Swanson wrote LeCroy a letter wherein Swanson claimed that he was threatened with arrest if he did not give a statement; the State failed to disclose a letter from the prosecutor to witness Freshour, advising him that he would be subject to service of process if he remained in the state after his testimony; there was a letter in the prosecutor's files from LeCroy's girlfriend relating his opinion that she has told the State all she knows about the case; and defense counsel found a handwritten letter in the State's files from someone named "John" to someone named "Richard," asking for Richard's assistance in obtaining a chief investigator's position.
[6] See, e.g., Hegwood v. State, 575 So.2d 170 (Fla. 1991).
[7] See, e.g., Routly v. State, 590 So.2d 397 (Fla. 1991).
[8] See, e.g., Kennedy v. State, 547 So.2d 912 (Fla. 1989).
[9] LeCroy claims that trial counsel was ineffective for failing to develop mitigating evidence in a number of ways, including the following: present mental health evidence through Drs. Romanos and Silversmith and through school records of LeCroy's low mental age, his immaturity, his learning disability, his emotional disturbance, his compulsivity, his indecisiveness, and his insecurity; present evidence of his adjustment to jail; present evidence showing LeCroy had a diminished level of psychological functioning at the time of the offense; present evidence of Jon LeCroy's guilt; present evidence of LeCroy's poor and abusive upbringing; and present evidence of the mental instability of LeCroy and other family members during the search for the Hardemans.
[10] LeCroy claims that counsel was ineffective in a number of ways including the following: failing to discover and use Jon's polygraph results; failing to present evidence that Jon gave police a rifle different from the one he had used the day of the murders; failing to present a letter Jon wrote his attorney asking him if he would get more time than his brother if convicted; failing to present evidence that LeCroy's parents favored Jon and changed their initial statement to police; and failing to present evidence of improper police tactics used to coerce statements from Jon and his parents.
[11] Claims 7-16 are procedurally barred.
[12] Claim 6 is without merit.
[13] Issues 4, 5 and 6 are without merit.
[14] Interestingly, the record reflects that a judge earlier assigned to the case initially scheduled an evidentiary hearing.