831 So.2d 651 (2002)
Charles W. FINNEY, Appellant,
v.
STATE of Florida, Appellee.
Charles W. Finney, Petitioner,
v.
Michael W. Moore, Respondent.
Nos. SC00-1351, SC01-356.
Supreme Court of Florida.
September 26, 2002.
Rehearing Denied November 22, 2002.
*653 John W. Moser, Capital Collateral Regional CounselMiddle Region, Joseph T. Hobson, Assistant CCRC, Richard E. Kiley, Assistant CCRC, and Eric C. Pinkard, Assistant CCRC, Tampa, FL, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Carol M. Dittmar, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Charles W. Finney appeals an order of the circuit court denying his first motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We affirm. Finney also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. We deny the petition.

I. FACTS
The relevant facts are set forth in this Court's decision on direct appeal, which provides in part:
According to the testimony at trial, Sandra Sutherland was discovered stabbed to death in her apartment shortly after 2 p.m. on January 16, 1991. The victim was found lying face down on her bed. Her ankles and wrists were tied and she had been gagged. On a nightstand near the bed was an open jar of face cream. The lid was lying next to the jar. The victim's bedroom had been ransacked, the contents of her purse had been dumped on the floor, and her VCR was missing.
According to the medical examiner the cause of death was multiple stab wounds to the back. Of the thirteen stab wounds, all but one penetrated the lungs causing bleeding and loss of oxygen, ultimately resulting in death. No bruises or other trauma was observed.

*654 Numerous fingerprints were gathered from the victim's apartment, including prints from a piece of paper with German writing and from the jar on the nightstand. Fingerprints also were taken from the missing VCR, which was located at a local pawn shop. Pawn shop records indicated that the VCR was brought in on January 16 at 1:42 p.m. by Charles W. Finney for a loan of thirty dollars. Finney's fingerprints matched prints taken from the pawn ticket, the VCR, the jar lid, and the paper with German writing.
After it was determined that Finney had pawned the victim's VCR, Detective Bell of the Tampa Police Department interviewed Finney on the afternoon of January 30, 1991. Finney told Bell that he knew the victim due to the fact that they had lived near each other in the same apartment complex. Finney told Bell that he had seen the victim twice since she moved to another apartment in the complex. Once, he had talked to her about putting a screened porch on the back of her new apartment and then about two months prior to the murder he talked to her by the mailboxes at the complex. When asked about his whereabouts on the day of the murder, Finney told Detective Bell that he was home sick all day and never left his apartment. Upon being confronted with the fact that he had pawned the victim's VCR, Finney told the detective he found it near the dumpster when he took out the garbage and then pawned it.
Finney called a witness who testified that the day before the murder he saw the victim arguing with a white male near the mailboxes at the apartment complex. Another defense witness testified that around 10 a.m. on the day of the murder, he saw William Kunkle, who worked as a carpenter at the apartment complex, come out of the victim's apartment. According to the witness, when Kunkle saw him, Kunkle came out of the door very quickly, locked the door with a key, and walked around the corner. The witness's girlfriend offered similar testimony as to Kunkle's conduct. In rebuttal, Kunkle testified that on January 16 he worked in the building next door to Ms. Sutherland's apartment, but had not been in her apartment that day. He denied ever having any conversation or interaction with the victim. The fingerprint examiner also testified during rebuttal that Kunkle's fingerprints did not match those found in the victim's apartment.
The defense sought to recall the medical examiner, Dr. Diggs, to testify that the crime scene was consistent with both a consensual sexual bondage situation and a situation where the victim consented to being bound and gagged out of fear. The State objected to the testimony as speculative. During proffer, Dr. Diggs told the court that whether a bondage situation was consensual was not something that a medical examiner would typically testify about or try to determine. The trial judge disallowed any testimony about the circumstances being consistent with sexual bondage, but allowed Dr. Diggs to testify concerning the probable positions of the victim and of the attacker and about the fact that there were no defensive wounds or other signs of a struggle.
Finney took the stand in his own defense. He testified that he had lived near Ms. Sutherland in the same apartment complex until she moved about eight months prior to the murder. A couple of months after she moved, Ms. Sutherland talked to him about screening in the patio of her new apartment. At that time, she handed him a piece of paper to write down measurements but *655 took the paper back. Finney testified that he returned about a week or two later but Ms. Sutherland had decided not to screen the patio. On that occasion he was in the victim's apartment, helped her move boxes and took various items out of the boxes. According to Finney the last time he saw Ms. Sutherland was a day or two before the murder. She was coming out of her apartment early one morning. She came over to his car and they talked. He further testified that he found the VCR near the dumpsters at the complex and had pawned it the same day for pocket cash. He stated that he did not steal the VCR and that he did not kill Ms. Sutherland.
Finney was convicted of first-degree murder, armed robbery, and dealing in stolen property. The jury recommended death by a vote of nine to three. The trial judge followed the recommendation. The judge found three aggravating factors: 1) Finney previously had been convicted of a violent felony; 2) the murder was committed for pecuniary gain; and 3) the murder was especially heinous, atrocious or cruel. She found five nonstatutory mitigating factors: 1) Finney's contributions to the community as evidenced by his work and military history; 2) Finney's positive character traits; 3) Finney would adjust well to a prison setting and had potential for rehabilitation; 4) Finney had a deprived childhood; and 5) Finney's bonding with and love for his daughter.
Finney v. State, 660 So.2d 674, 678-79 (Fla.1995) (footnote omitted). This Court affirmed.
Finney subsequently filed in circuit court his first postconviction motion for relief under Florida Rule of Criminal Procedure 3.850, raising five issues.[1] The court granted an evidentiary hearing on his ineffectiveness claim concerning hair and semen samples found at the crime scene but, when postconviction counsel received new DNA results relating to those specimens, counsel declined to proceed with that claim. The court denied the motion. Finney appeals, raising eleven issues.[2] He also has filed in this Court a petition for a writ of habeas corpus, raising eight issues.[3]

*656 II. EVIDENTIARY HEARING
Finney first claims that the circuit court erred in denying his various rule 3.850 claims without conducting an evidentiary hearing. We disagree. This Court encourages circuit courts to conduct evidentiary hearings on initial postconviction motions in capital cases when appropriate.[4] Currently, our rules of procedure provide that such a hearing "shall" be held in capital cases on initial postconviction motions filed after October 1, 2001, "on claims listed by the defendant as requiring a factual determination."[5]
For motions filed before October 1, 2001, the Court applies the following standard of review:
To uphold the trial court's summary denial of claims raised in a 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record. See Fla. R.Crim. P. 3.850(d). Further, where no evidentiary hearing is held below, we must accept the defendant's factual allegations to the extent they are not refuted by the record. See Lightbourne v. Dugger, 549 So.2d 1364, 1365 (Fla.1989).
Peede v. State, 748 So.2d 253, 257 (Fla. 1999).
In the present case, Finney filed his initial "shell" motion in March 1997 and his present amended motion in April 1999. As noted above, the circuit court granted an evidentiary hearing on his ineffectiveness claim but postconviction counsel declined to proceed with that hearing. The court then denied the motion. In its written order, the circuit court listed each of Finney's claims[6] and disposed of each as follows:

*657 Claims Two, Four, and Five are denied because they are procedurally barred. Postconviction motions are not to be used as second appeals. Issues that were or could have been raised on direct appeal are not cognizable in a Rule 3.850 motion.
As to Claim Two, defendant Finney's attack on jury instructions must be challenged on direct appeal.
Claim Four, pertaining to sentencing aggravators, should have been raised on direct appeal. Furthermore, the Florida Supreme Court has rejected this argument on its merits.
Claim Five is also procedurally barred as it should have been raised on direct appeal. Additionally, this claim has been repeatedly rejected.
Lastly, as to Claims Two, Four, and Five, defense counsel stated at the Huff hearing that Claims Two, Four, and Five, were primarily pled for purposes of federal habeas petition.
Claim One alleges ineffective assistance of counsel and breaks the claim into various sub-issues.
A. Inadequate Voir Dire
First, defendant complains that a potential juror brought up the race issue. This juror was excused for cause. The record clearly establishes that a question was posed to juror Kinsley about whether he had ever been wrongly accused of doing something. Mr. Kinsley responded, "I thought it was a racial thing." It is clear that Mr. Kinsley is responding to the posed question and is not making a comment on the instant case.
Defendant complains that the voir dire was not adequate. The record speaks for itself and the transcript of the complete voir dire is attached.
Defendant Finney also argues that the prosecution extracted promises from the jurors regarding their ability to be fair and alluded to the additional evidence they would hear in the second phase. The transcript clearly establishes that the prosecutor asked the jury to "promise Mr. Finney that they would keep an open mind." Furthermore, Defendant's contention fails under the analysis of Strickland. It is the obligation of counsel to determine in voir dire if a juror can be fair and unbiased [in] the penalty phase.
Counsel for defendant Finney acknowledges that his complaint about the prosecutor interjecting his personal feelings was procedurally barred.
Defendant Finney complains that counsel failed to object when the prosecutor misstated the law. The trial court clearly instructed the jury that the court instructs on the law, not counsel.
The last point in sub-issue A of Claim One was a complaint that the prosecutor excused two jurors, Silas and Jennings, for cause who were opposed to the death penalty. The record is clear that neither juror was successfully rehabilitated. The excusal for cause was correct.
B. Counsel was ineffective for failure to challenge the State's case.
The defense claimed there were hair samples, fingerprints and semen stains taken at the time of the offense. However, a stipulation was entered acknowledging *658 that according to FDLE, there was not a sufficient sample of semen to test. This Court on May 26, 1999, granted an evidentiary hearing to compare the hair samples and semen samples to defendant Finney's as DNA replication is now possible. Subsequently, after court orders were granted for defendant Finney's blood samples and the blood was taken, defense counsel indicated he could not proceed with this claim.
C. Counsel was ineffective for failure to provide a mental health expert with adequate background information to permit a meaningful evaluation.
Defense counsel admits that some of the mitigation evidence is cumulative. There are no specific examples of mitigation evidence pled, nor is there an affidavit from defendant Finney's mental health expert at trial that he has reviewed the mitigation evidence and that his testimony would have been different than at trial. Defendant Finney has failed to establish how any failure on the part of his counsel has prejudiced him.
Mr. Finney has not alleged any specific facts regarding what mitigating evidence exists or what the alleged witnesses could testify to. The Florida Supreme Court in LeCroy v. Dugger, 727 So.2d 236 (Fla.1998), addressed this issue:
A motion for post conviction relief can be denied without an evidentiary hearing when the motion and record conclusively demonstrate that the movant is entitled to no relief. A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted on the record and demonstrate deficiency on the part of counsel which is detrimental to the defendant.
As in LeCroy, defendant Finney failed to make even a prima facie showing of prejudice which would warrant an evidentiary hearing.
E. Counsel was ineffective for failing to object when the State introduced collateral crime evidence in the penalty phase.
Defendant Finney complains that the trial court improperly admitted the [live testimony of the] victim of a prior similar crime committed by defendant Finney. However, on direct appeal the Supreme Court specifically held that evidence of a prior violent felony conviction is admissible in a capital sentencing proceeding, unless unduly prejudicial.
Testimony concerning the circumstances that resulted in a prior conviction is allowed to assist the jury in evaluating the defendant's character and the weight to be given the prior conviction so that the jury can make an informed decision as to the appropriate sentences.
Furthermore, the Supreme Court noted that it is not appropriate to go behind the jury's verdict in the prior case in an attempt to retry that conviction.
F. The sentencing court's inability to find and apply various mitigating circumstances because ineffective presentation of mitigating evidence violates the Eighth Amendment.
Defendant Finney complains that mitigation evidence of his abusive childhood and other matters were not weighed by the sentencing court. To the contrary, the trial court's sentencing order of November 10, 1992, and the transcript state: *659 Dr. Gamache testified that the defendant came from a deprived childhood with an alcoholic father whom he barely knew and how he left the family when the defendant was merely three years old. The defendant was extremely poor and had to fend for himself for most of his needs. This testimony was not seriously impeached by the prosecution and the Court gave this some weight.
Subissue F is without merit.
All of the issues under Claim One are hereby denied. Defendant is not entitled to relief.
Claim ThreeNewly discovered evidence establishes that Mr. Finney's capital conviction and sentences are constitutionally unreliable.
This claim is also denied and defendant is not entitled to any relief. This claim is a "catch all" and as the results of the DNA testing were not litigated, there is no newly discovered evidence.
(Citations omitted.) Based on the foregoing and our review of the record, we conclude that the circuit court properly applied the law and did not err in denying Finney's rule 3.850 motion after Finney declined to proceed with an evidentiary hearing on his ineffectiveness claim vis-a-vis hair and semen specimens found at the crime scene.

III. POSTCONVICTION COUNSEL
While Finney acknowledges that no remedial mechanism has been formalized in Florida for resolving claims of ineffective assistance of postconviction counsel, he nevertheless asserts that his prior postconviction counsel rendered impermissibly substandard performance in formulating his present rule 3.850 motion. He claims that prior counsel failed to adequately allege that trial counsel was ineffective in presenting mitigating evidence and that this failure led to the circuit court's denial of his ineffectiveness claim. Finney notes that he previously filed in circuit court a pro se motion to dismiss his prior postconviction counsel but the court denied that motion.[7]
Finney now alleges that his prior postconviction counsel should have asserted that trial counsel failed to present specific witnesses who "could have strengthened the story of appellant's upbringing, childhood and teen years through independent sources, perhaps more persuasively than the appellant himself." Finney contends that these witnesses could have attested to the following: as a child, Finney fell from his rocking chair and hit his head; as a child, he was anemic and often fainted; he had trouble reading and was stubborn in school; his best friend drowned; his cousin shot him in the abdomen; he witnessed the hit-and-run death of a cousin; he developed a drug problem in the military and entered a rehabilitation program. We disagree.
The record shows that trial counsel presented substantial mitigating evidence during the penalty phase. Finney's common law wife, Tammy Gallimore, testified at length about his positive character traits, describing him as gentle, kind, and caring *660 and relating how he had supported her emotionally and financially as she pursued her education and as she progressed through the pregnancy and birth of their daughter. She testified that he was a hard worker, taking a second job when they lived in Georgia in order to make voluntary child support payments to his ex-wife and again when they lived in Florida to help their own financial situation. She described his devotion to their daughter, even throughout his incarceration, and extensively discussed his artistic talents. She noted that everyone liked Finney and that he always had stable employment and helped around the house.
Joseph Williams also testified during the penalty phase. He was a friend of Finney's who helped him get a job at University Community Hospital shortly after Finney moved to Florida. Williams testified that he loved Finney like a son, that Williams's two sons, ex-wife, and mother all liked Finney. He said that Finney was honest, appreciative, completely trustworthy, very spiritual, and crazy about his (i.e., Finney's) family. He testified that Finney had been honorably discharged from the military and that Finney was "the best working man" Williams had ever met; he would do anything that anyone asked of him and was a dependable, enthusiastic employee.
Dr. Michael Gamache, a forensic psychologist, also testified on Finney's behalf during the penalty phase. He stated that he conducted two clinical examinations of Finney, spending a total of five and one-half hours with him. He described Finney's background in detail. Finney was born in Macon, Georgia, where his family lived at or near the poverty level. His mother was a dietitian; his father was a carpenter. His father was a very heavy drinker; he abandoned the family when Finney was about three years old. Finney was the youngest of three children. Gamache described Finney as an average or better student who got along well with teachers and other students. He noted that Finney enlisted in the Army after graduation, serving two years in the First Airborne Ranger Division before being honorably discharged. Upon returning to Macon, he used his military benefits to pursue his educational and career goals. He had gotten married while in the military, and a son was born in 1973, while Finney still was in the Army. In Macon, Finney maintained stable employment and provided for his family, ultimately landing a "plum" job at a power plant that had excellent job security and benefits. He and his wife were both religious, but they grew apart and started losing interest in each other; they were separated and then divorced. Finney later met Tammy and they became close friends; he was willing to give up his secure job to come with her to Florida, where she wanted to continue her education.
Dr. Gamache noted that Finney had been a very good employee his entire adult life; there never was any difficulty or dissatisfaction with his work habits. Gamache had spoken with Tammy at length and she had corroborated Finney's description of the ending of his first marriage and the strength of their relationship, as well as Finney's very close bond with his daughter. He noted that Finney, Tammy, and their daughter Shannon were a very close, loving family, and that the family relationships were very strong and positive, without any serious problems.
The record shows that the mitigating evidence that was presented during the penalty phase was sufficiently compelling to convince the circuit court to find and give weight to five nonstatutory mitigating factors: Finney's contribution to the community and society as evidenced by his *661 exemplary work and military history; his positive character traits; his ability to adjust well to prison life and his excellent potential for rehabilitation; his deprived childhood; and his continued contribution to his family through the bonding and love he showed for this daughter during frequent visitations and contacts.
In light of the mitigating testimony that was presented at trial, and considering the aggravated nature of the murder in this case, we conclude that the newly proffered evidence is not sufficiently compelling to have changed the outcome of the penalty phase proceeding. As noted above, there was testimony presented during the penalty phase concerning Finney's military service, which took place in 1972-74, and the fact that he may have used drugs nearly twenty years before the murder. We do not find this sufficiently compelling to warrant relief at this stage of the proceedings. Nor is the fact that he may have experienced several childhood falls, bumps, and traumas. Accordingly, we find no merit to this claim.

IV. CONCLUSION
The remainder of Finney's rule 3.850 claims are either procedurally barred or without merit.[8] His habeas claims also are without merit.[9] We affirm the denial of rule 3.850 relief and deny his petition for a writ of habeas corpus.
It is so ordered.
*662 ANSTEAD, C.J., SHAW, WELLS, and LEWIS, JJ., and HARDING, Senior Justice, concur.
PARIENTE, J., concurs in result only.
QUINCE, J., recused.
NOTES
[1] Finney raised the following claims: (1) his trial counsel was ineffective in the guilt and penalty phases of the trial; (2) the jury instructions were unconstitutional; (3) newly discovered evidence showed that the conviction and sentence were unreliable; (4) Finney's death sentence rests on an automatic aggravating circumstance; (5) Florida's capital sentencing scheme is unconstitutional.
[2] Finney raises the following claims: (1) the circuit court erred in summarily denying Finney's rule 3.850 claims; (2) the circuit court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to object to certain prosecutorial comments; (3) the circuit court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to adequately question prospective jurors; (4) the circuit court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to object to the excusal of certain jurors; (5) the circuit court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to present additional mitigating evidence; (6) the circuit court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to provide the defense mental health expert with adequate background information; (7) the circuit court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to retain an expert to testify concerning the crime scene; (8) the circuit court erred in failing to ensure that postconviction counsel rendered effective performance; (9) Florida's capital sentencing scheme is unconstitutional; (10) Finney's trial was fraught with error; (11) Finney is innocent of the death penalty.
[3] Finney raises the following claims: (1) appellate counsel was ineffective in failing to raise the issue of the admissibility of victim photographs; (2) appellate counsel was ineffective in failing to raise the issue of the victim's mother being present in the courtroom; (3) appellate counsel was ineffective in failing to raise the issue of the trial court's failure to rule on the defendant's motion for sequestration; (4) appellate counsel was ineffective in failing to raise the issue of the excusal of two jurors for cause; (5) appellate counsel was ineffective in failing to raise the issue of the trial court's failure to instruct the jury to disregard certain comments by the prosecutor; (6) Finney may be incompetent at the time of execution; (7) the Death Penalty Reform Act of 2000 is unconstitutional; (8) execution by lethal injection is unconstitutional.
[4] See generally Allen v. Butterworth, 756 So.2d 52, 66-67 (Fla.2000) (noting the problems caused by the failure of circuit courts to conduct such hearings).
[5] See Fla. R.Crim. P. 3.851(f)(5)(A)(i).
[6] The circuit court noted that the following claims were raised by Finney in his rule 3.850 motion:

1. Defendant was denied effective assistance of counsel in the guilt and sentencing phases of his capital trial.
A. Counsel was ineffective for failing to adequately question potential jurors on their view of the death penalty, credibility of witnesses, mental health mitigation, and mental health experts, and counsel failed to object to misstatements of the law by the prosecutor, and failed to present issues for appeal.
B. Counsel was ineffective for failing to challenge the State's case.
C. Counsel was ineffective for failing to provide the mental health expert with adequate background information to establish mitigation or negate specific intent.
D. Counsel was ineffective for failing to present all mitigating evidence.
E. Counsel was ineffective for failing to preserve the record.
F. Counsel was ineffective in presenting mitigation evidence.
2. The death sentence is invalid because the jury instructions were constitutionally invalid.
A. The instruction on the aggravator of "commission of a murder during the course of a robbery" is unconstitutional on its face and as applied.
B. The jury instructions shifted the burden to Mr. Finney to prove death was inappropriate.
C. The Trial Court's instruction to the jury diluted its sense of responsibility.
3. Newly discovered evidence established that Defendant Finney's capital conviction and sentence are constitutionally unreliable.
4. Defendant Finney's sentence rests upon an unconstitutionally automatic aggravating circumstance.
5. Florida's capital sentencing statute is unconstitutional on its face and as applied.
[7] Finney's main contention in his pro se motion was that postconviction counsel should not use Finney's own pretrial specimen for DNA matching with hair and semen found at the crime scene because the pretrial specimen may have been tampered with by police. That issue, however, was resolved when counsel arranged for an independent blood draw from Finney. As explained above, once the results of that blood draw were made available to the defense, the defense abandoned that issue. We find no abuse of discretion in the trial court's denial of Finney's pro se motion. See Howell v. State, 707 So.2d 674, 680 (Fla.1998).
[8] Claims (1) through (8) are without merit for the reasons given above. To the extent that claim (1) alleges additional circuit court error in the rendering of the order under review, those allegations also are without merit. To the extent that claim (8) alleges additional instances of substandard performance by postconviction counsel or errors committed by the court below, those allegations are without merit. Claim (9) was properly denied by the circuit court below. See, e.g., Hall v. State, 742 So.2d 225, 226 (Fla.1999). Claim (10) was not raised below and thus is procedurally barred. See, e.g., Shere v. State, 742 So.2d 215, 219 n. 9 (Fla.1999). Likewise, claim (11) was not raised below and is procedurally barred. Id.
[9] Finney's habeas claims are without merit for various reasons. (1) Trial counsel objected to only one victim photo but the trial court determined that this was the only photo that showed the gag placed on the victim's mouth and the court admitted that photo. We find no abuse of discretion by the trial court in this matter and thus no ineffectiveness of appellate counsel in failing to raise this claim on appeal. See, e.g., Mendyk v. State, 592 So.2d 1076, 1081-82 (Fla.1992). (2) Finney fails to allege how he was prejudiced when the trial court allowed the victim's mother to sit in the courtroom after she testified; Finney does not allege that the mother engaged in any prejudicial conduct. We find no abuse of discretion by the trial court in this matter and thus no ineffectiveness of appellate counsel in failing to raise this claim on appeal. See Sireci v. State, 587 So.2d 450, 454 (Fla.1991). (3) Finney fails to allege any prejudice resulting from the trial court's denial of his motion to sequester the jury. We find no abuse of discretion by the trial court in this matter and thus no ineffectiveness of appellate counsel in failing to raise this claim on appeal. See generally Banda v. State, 536 So.2d 221, 224 (Fla.1988). (4) Two jurors were excused for cause after expressing prejudice against the death penalty. We find no abuse of discretion by the trial court in this matter and thus no ineffectiveness of appellate counsel in failing to raise this claim on appeal. See Castro v. State, 644 So.2d 987, 990 (Fla.1994). (5) The trial court sustained defense counsel's objection when the prosecutor said in closing argument that no sperm was found vaginally or orally on the victim; the court gave a curative instruction to which defense counsel did not object. This issue was not preserved for review and appellate counsel cannot be faulted not raising it on appeal. See Kokal v. Dugger, 718 So.2d 138, 142-43 (Fla.1998). (6) Defense counsel acknowledges that this claim is premature but contends that it must be raised to preserve it for federal review. (7) This claim already has been decided adversely to the defendant. See Sims v. State, 754 So.2d 657, 663-65 (Fla.2000). (8) This claim already has been decided adversely to the defendant. Id. at 666-68.