497 So.2d 1211 (1986)
James FLOYD, Appellant,
v.
STATE of Florida, Appellee.
No. 66088.
Supreme Court of Florida.
November 20, 1986.
*1212 James Marion Moorman, Public Defender, Tenth Judicial Circuit, and W.C. McLain, Asst. Public Defender, Chief, Capital Appeals, Bartow, for appellant.
Jim Smith, Atty. Gen., and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
BARKETT, Justice.
James Floyd appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction but vacate the death sentence.
James Floyd was indicted for the murder of Annie Bar Anderson. He was also charged with two counts of forgery, two counts of uttering a forged check, and two counts of grand theft.
The victim was found dead in one of the bedrooms of her home on the evening of Tuesday, January 17, 1984. She was last seen alive on the afternoon of January 16, 1984, when she cashed a check at her bank. According to the testimony of the medical examiner, she had been killed sometime that afternoon or evening by a stab wound to her chest. When the police arrived at the victim's home on January 17, 1984, the back door was unlocked, and there were no signs of a forced entry. In the room in which they found the victim, there were fresh "pry marks" beneath the window, indicating that someone had attempted to exit from that window.
*1213 On the afternoon of the victim's death (Monday, January 16), Floyd had cashed a check for $500 from the victim's account. He was arrested after attempting to flee from the police when he tried to cash a second check for $700 on the same account two days later (Wednesday, January 18). When questioned by the police, Floyd admitted forging the $700 check, explaining that he had found the checkbook on Tuesday near a dumpster. He subsequently revised his story when confronted with the police knowledge that he had cashed the $500 check on Monday. In addition, he admitted owning a brown jacket that was found outside the bank where he was arrested. A sock soaked with blood of the victim's blood type (which was not the defendant's blood type) was found in one of the jacket pockets.
Over objection at trial, the court permitted an officer to testify to Floyd's statement at the police station that: "I know the police are mad at me for running, but I've been in jail before and I don't want to go back."
At trial the state also presented the testimony of Greg Anderson, a cellmate of Floyd's who testified that Floyd told him that he had stabbed the victim when she surprised him in the course of the burglary.
During the penalty phase, the trial court instructed the jury on five aggravating circumstances but failed to give any instructions on mitigating circumstances. The jury recommended the death penalty by a seven to five vote. The trial court sentenced Floyd to death finding the following aggravating circumstances: (1) that the murder was committed during a burglary; (2) that it was committed to avoid or prevent a lawful arrest; (3) that it was committed for pecuniary gain; (4) that it was heinous, atrocious, and cruel; and (5) that it was committed in a cold, calculating, and premeditated manner without any pretense of moral or legal justification.
Floyd first challenges his conviction on the basis of the officer's testimony relating appellant's statement regarding his prior incarceration. Floyd concedes that the state could present evidence of his flight at arrest. He argues, however, that the trial court erred in letting the jury hear that he had been incarcerated at a prior time. We disagree. This testimony was relevant to the issue of flight and was, therefore, admissible.
The second issue raised by Floyd concerns death qualified juries and has been resolved by this Court in Kennedy v. Wainwright, 483 So.2d 424 (Fla. 1986), and by the Supreme Court in Lockhart v. McCree, ___ U.S. ___, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).
After reviewing the record, we find no reversible error in the guilt phase of Floyd's trial. Accordingly, we affirm Floyd's conviction for first-degree murder.
Floyd raises a number of points concerning the penalty phase of his trial. First, he argues that the trial judge erred in not finding any mitigating circumstances in the testimony of the victim's daughter, Anne Anderson. The victim's daughter had been permitted to tell the jury that both she and her mother opposed capital punishment. In addition, correspondence between appellant and the victim's daughter had been admitted into evidence. It appears the trial judge considered Anderson's testimony, but simply did not accord it the weight Floyd believes it deserved. This Court has considered this issue in Porter v. State, 429 So.2d 293, 296 (Fla.), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983), noting:
There is no requirement that a court must find anything in mitigation. The only requirement is that the consideration of mitigating circumstances must not be limited to those listed in section 921.141(6), Florida Statutes (1981). What Porter really complains about here is the weight the trial court accorded the evidence Porter presented in mitigation. However, "mere disagreement with the force to be given [mitigating evidence] is an insufficient basis for challenging a sentence." Quince v. State, 414 So.2d 185, *1214 187 (Fla. 1982). We do not find that the trial court failed to consider the evidence presented in mitigation of the sentence.
In light of Porter, this argument is without merit.
Nor do we find merit in Floyd's contention that the proof in the record before us is insufficient to sustain a finding of the aggravating factor of heinous, atrocious, and cruel under section 921.141(5)(h). In State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), this Court defined what was meant by heinous, atrocious, or cruel. We said:
It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
Id. at 9. In this case, the trial court found that
This capital felony was especially heinous, atrocious and cruel. The medical examiner testified that the victim died from the deep stab wound to the chest within a short period of time, perhaps two to four minutes, after sustaining that wound. However, from the evidence, it may reasonably be inferred that the defendant continued stabbing the victim while she was still alive for a total of twelve stab wounds to her torso and what was characterized by the medical examiner as one defensive stab wound to the hand.
Under these circumstances, we cannot say that the trial judge erred in finding this aggravating factor.
We agree, however, with Floyd's contention that the aggravating factor of cold, calculated, and premeditated under section 921.141(5)(i) was not proved beyond a reasonable doubt. The aggravating circumstance that the murder committed was cold, calculated, and premeditated requires a "heightened" form of premeditation. Phillips v. State, 476 So.2d 194, 197 (Fla. 1985); Hardwick v. State, 461 So.2d 79, 81 (Fla. 1984), cert. denied, 471 U.S. 1120, 105 S.Ct. 2369, 86 L.Ed.2d 267 (1985). This aggravating factor is not to be used in every premeditated murder prosecution, but is reserved primarily for those murders which are characterized as execution or contract murders or witness-elimination murders. Bates v. State, 465 So.2d 490, 493 (Fla. 1985). The pry marks indicating an attempt to escape before confronting the victim preclude a finding beyond a reasonable doubt that this murder was cold, calculated, and premeditated. Compare Lara v. State, 464 So.2d 1173, 1180 (Fla. 1985) (aggravating factor of cold, calculated, and premeditated was upheld because the evidence showed the defendant went to the victim's home with the clear intention of killing her); Troedel v. State, 462 So.2d 392, 397 (Fla. 1984) (cold, calculated, and premeditated factor found where evidence showed defendant had planned in advance to go to the victims' home and kill them). The fact that a defendant murders his victim instead of simply fleeing is not, by itself, sufficient to prove beyond a reasonable doubt that the murder was cold, calculated, and premeditated under section 921.141(5)(i). See Thompson v. State, 456 So.2d 444, 446 (Fla. 1984).
The trial court also erred in finding that the aggravating circumstance of section 921.141(5)(e) (i.e., that the murder was committed to prevent arrest) was established beyond a reasonable doubt. In Riley v. State, 366 So.2d 19, 22 (Fla. 1978), we held that: "[T]he mere fact of a death is not enough to invoke this factor when the victim is not a law enforcement official. Proof of the requisite intent to avoid arrest and detection must be very strong in these cases." The fact that the victim might have been able to identify Floyd is insufficient *1215 to prove this aggravating factor beyond a reasonable doubt. See Bates, 465 So.2d at 492. See also Caruthers v. State, 465 So.2d 496, 499 (Fla. 1985) (state did not establish aggravating circumstance that murder was committed to avoid or prevent arrest by proving victim knew assailant). The state must clearly show that the dominant or only motive for the murder was the elimination of a witness. See Bates, 465 So.2d at 492; Oats v. State, 446 So.2d 90, 95 (Fla. 1984); Menendez v. State, 368 So.2d 1278, 1282 (Fla. 1979).
Lastly, we agree that the trial judge's failure to adequately instruct the jury on mitigating circumstances requires resentencing. In the penalty phase, letters were put into evidence which showed that Floyd's father was dead, his mother was an alcoholic, and that he was the father of two small children. In addition, the victim's daughter explained her family's belief that capital punishment was wrong. Although there was evidence presented from which the jury could have found nonstatutory mitigating circumstances, the trial judge failed to give any instructions on what could be considered in mitigation. He believed no instruction was necessary because, in his opinion, no mitigating circumstances had been established by the evidence. This error was compounded by the prosecutor's closing argument to the jury that there were no mitigating factors.
Under our capital sentencing statute, a defendant has the right to an advisory opinion from a jury. See § 921.141(2), Fla. Stat.(1985); Richardson v. State, 437 So.2d 1091, 1095 (Fla. 1983); Lamadline v. State, 303 So.2d 17, 20 (Fla. 1974). In determining an advisory sentence, the jury must consider and weigh all aggravating and mitigating circumstances. See § 921.141(2). The aggravating factors to be considered are limited to those enumerated in section 921.141(5). Drake v. State, 441 So.2d 1079, 1082 (Fla. 1983), cert. denied, 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 832 (1984); Purdy v. State, 343 So.2d 4, 6 (Fla.), cert. denied, 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977). The mitigating factors, however, are not so limited. King v. State, 390 So.2d 315, 321 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981); Songer v. State, 365 So.2d 696, 700 (Fla. 1978) (on rehearing), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979). The United States Supreme Court has held that a sentencer must not be precluded from considering any aspect of a defendant's character or record or any of the circumstances of the offense. See Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). See also Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The jury must be instructed either by the applicable standard jury instructions or by specially formulated instructions, that their role is to make a recommendation based on the circumstances of the offense and the character and background of the defendant. Cf. Herring v. State, 446 So.2d 1049, 1056 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984).
The instructions to the jury in this case were incomplete. Although the trial judge instructed the jury on the relevant aggravating factors, and stated that the jury was to "weigh the aggravating circumstances versus the mitigating circumstances," he failed to give any instructions on what could be considered as a mitigating circumstance. Although none of the statutory mitigating factors were applicable, the jurors, having been told that they were to weigh mitigating factors, were not instructed that they were permitted to consider nonstatutory mitigating factors. This not only confused the jury (as evidenced by their questions during deliberations), but may have precluded from their consideration relevant nonstatutory mitigating circumstances in violation of Lockett and Eddings. As we said in Cooper v. State, 336 So.2d 1133, 1140 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977), a trial judge should not be permitted in any way to inject his preliminary views of a proper sentence into the jurors' deliberations:

*1216 The Legislature intended that the trial judge determine the sentence with advice and guidance provided by a jury, the one institution in the system of Anglo-American jurisprudence most honored for fair determinations of questions decided by balancing opposing factors. If the advisory function were to be limited initially because the jury could only consider those mitigating and aggravating circumstances which the trial judge decided to be appropriate in a particular case, the statutory scheme would be distorted. The jury's advice would be preconditioned by the judge's view of what they were allowed to know.
(Emphasis added.)
The trial court must at the very least instruct in accordance with the standard jury instruction that the jury may consider in mitigation:
8. Any other aspect of the defendant's character or record, and any other circumstance of the offense.
Fla.Std. Jury Instr. (Crim.) (Penalty Proceedings  Capital Cases at 81). The trial court in this case failed to give this Lockett instruction. Moreover, the trial court neglected to instruct the jury that:
If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.
A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.
See id.
The need for the instructions is evidenced by the jury's questions after thirty minutes of deliberation:
One, how Court defines aggravating versus mitigating.
Two, the five aggravating factors.
The trial court gave the same instructions it had previously given. The jury then resumed its deliberations and was reconvened in order to permit the court to clarify its instructions regarding a majority verdict. After this reinstruction, the jurors recommended death by a vote of seven to five.
In view of the inadequate and confusing jury instructions, we believe Floyd was denied his right to an advisory opinion. We cannot sanction a practice which gives no guidance to the jury for considering circumstances which might mitigate against death. See Peek v. State, 395 So.2d 492, 496-497 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). Accordingly, we vacate Floyd's death sentence and remand for a resentencing hearing before a jury in accordance with this opinion.
It is so ordered.
McDONALD, C.J., and BOYD, OVERTON and SHAW, JJ., concur.
ADKINS and EHRLICH, JJ., concur in result only.