808 So.2d 175 (2002)
James FLOYD, Appellant,
v.
STATE of Florida, Appellee.
James Floyd, Petitioner,
v.
Michael W. Moore, Secretary, Florida Department of Corrections, Respondent.
Nos. SC00-1533, SC97043.
Supreme Court of Florida.
January 17, 2002.
*178 Pamela H. Izakowitz, Assistant CCRC, Capital Collateral Regional Counsel-South, Tampa, FL, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Carol M. Dittmar, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
James Floyd, a prisoner under sentence of death, appeals the trial court's summary *179 denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850, and he petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons stated below, we affirm in part and reverse in part the trial court's order denying postconviction relief without an evidentiary hearing; and remand for the limited purpose of conducting an evidentiary hearing on Floyd's claims of ineffective assistance of counsel and his Brady claim.[1] We deny Floyd's petition for writ of habeas corpus.

BACKGROUND
Floyd was convicted and sentenced to death for the 1984 murder of Annie Bar Anderson. The facts in this case are taken from Floyd's initial direct appeal where they are set forth in greater detail. See Floyd v. State, 497 So.2d 1211 (Fla.1986). The relevant facts are as follows:
James Floyd was indicted for the murder of Annie Bar Anderson. He was also charged with two counts of forgery, two counts of uttering a forged check, and two counts of grand theft.
The victim was found dead in one of the bedrooms of her home on the evening of Tuesday, January 17, 1984. She was last seen alive on the afternoon of January 16, 1984, when she cashed a check at her bank. According to the testimony of the medical examiner, she had been killed sometime that afternoon or evening by a stab wound to her chest. When the police arrived at the victim's home on January 17, 1984, the back door was unlocked, and there were no signs of a forced entry. In the room in which they found the victim, there were fresh "pry marks" beneath the window, indicating that someone had attempted to exit from that window.
On the afternoon of the victim's death (Monday, January 16), Floyd had cashed a check for $500 from the victim's account. He was arrested after attempting to flee from the police when he tried to cash a second check for $700 on the same account two days later (Wednesday, January 18). When questioned by the police, Floyd admitted forging the $700 check, explaining that he had found the checkbook on Tuesday near a dumpster. He subsequently revised his story when confronted with the police knowledge that he had cashed the $500 check on Monday. In addition, he admitted owning a brown jacket that was found outside the bank where he was arrested. A sock soaked with blood of the victim's blood type (which was not the defendant's blood type) was found in one of the jacket pockets.
Id. at 1212-13. The jury convicted Floyd of first-degree murder and recommended death by a vote of seven to five. See id. at 1213. The trial court followed the jury's recommendation and sentenced Floyd to death.[2] On appeal, this Court affirmed Floyd's conviction but vacated the death sentence. See id. at 1212. We determined that the cold, calculated, and premeditated (CCP) and avoid arrest aggravating factors were not established beyond a reasonable doubt. See id. at 1214. In addition, we found that the trial judge failed to adequately instruct the jury on *180 mitigating circumstances. See id. at 1215-16. Accordingly, we remanded the case for a resentencing hearing before a jury. See id. at 1216.
Following a resentencing hearing, the jury recommended death by a vote of eight to four. The trial court followed the jury's recommendation and sentenced Floyd to death. In so doing, the trial court found two aggravating circumstances[3] and no mitigating circumstances. We affirmed Floyd's death sentence on appeal. See Floyd v. State, 569 So.2d 1225 (Fla.1990).
Floyd timely filed his initial 3.850 motion on August 17, 1992. Although the motion was signed by counsel, it was unverified. Floyd subsequently filed a verification on April 8, 1994, and an amended 3.850 motion on August 1, 1994. On April 12, 1996, the State filed a motion to strike Floyd's amended motion as unverified. On May 16, 1996, the trial court entered an order finding that Floyd's motions were improperly verified. Thereafter, the trial court entered an order granting the State's motion to strike Floyd's motions. Floyd appealed the trial court's order to this Court and we dismissed the appeal without prejudice for Floyd to file a properly verified amended 3.850 motion. See Floyd v. State, No. 89,783, 698 So.2d 1225 (Fla. Aug.18, 1997). Floyd subsequently filed a properly verified amended 3.850 motion on April 9, 1998. On November 13, 1998, Floyd filed his final amended motion raising nineteen claims.[4]
Following a Huff[5] hearing, the trial court entered an order summarily denying thirteen of Floyd's claims[6] and directing the State to show cause why Floyd was not entitled to an evidentiary hearing on the remaining six claims.[7] The State filed its response to the show cause order on April 16, 1999. On July 22, 1999, the trial court *181 entered an order summarily denying Floyd's remaining claims. Thereafter, Floyd filed a motion to reconsider and set aside the denial of his 3.850 motion and a motion to disqualify the trial judge. The trial court denied both of Floyd's motions.

3.850 APPEAL
Floyd raises eight issues on appeal,[8] many of which may be disposed of summarily because they are procedurally barred,[9] facially or legally insufficient,[10] or without merit.[11] Floyd's remaining claims, *182 however, warrant discussion and we will address them in turn.

INEFFECTIVE ASSISTANCE OF COUNSEL
In his postconviction motion, Floyd raised several claims of ineffective assistance of counsel. Specifically, Floyd asserted that trial counsel was ineffective for failing to adequately investigate and present mitigating evidence during the penalty phase at resentencing,[12] and counsel provided ineffective assistance during voir dire at the same resentencing.[13] In addition, Floyd asserted that his original trial counsel rendered ineffective assistance during the guilt phase.[14] Floyd contends that the trial court should have held an evidentiary hearing on these claims. We agree.
Under rule 3.850, a postconviction defendant is entitled to an evidentiary hearing unless the motion and record conclusively show that the defendant is entitled to no relief. See Fla. R.Crim. P. 3.850(d); Peede v. State, 748 So.2d 253, 257 (Fla.1999); Gaskin v. State, 737 So.2d 509, 516 (Fla.1999). A "movant is entitled to an evidentiary hearing on a claim of ineffective assistance of counsel if he alleges specific `facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant.'" Gaskin, 737 So.2d at 516 (quoting Roberts v. State, 568 So.2d 1255, 1259 (Fla.1990)); see also Mendyk, 592 So.2d at 1079; Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). Upon review of a trial's court summary denial of postconviction relief without an evidentiary hearing, this Court must accept a defendant's factual allegations as true to the extent they are not refuted by the record. See Occhicone v. State, 768 So.2d 1037, 1041 (Fla.2000); Gaskin, 737 So.2d at 516; Lightbourne v. Dugger, 549 So.2d 1364, 1365 (Fla.1989).
In Gaskin, we reiterated that "[w]hile the postconviction defendant has the burden of pleading a sufficient factual basis for relief, an evidentiary hearing is presumed necessary absent a conclusive *183 demonstration that the defendant is entitled to no relief." Gaskin, 737 So.2d at 516. Indeed, we have strongly urged trial courts to err on the side of granting evidentiary hearings in cases involving initial claims for ineffective assistance of counsel in capital cases. See id. at 516 n. 17; see also Mordenti v. State, 711 So.2d 30, 33 (Fla.1998) (Wells, J., concurring) (advocating mandatory evidentiary hearing for all initial 3.850 motions asserting ineffective assistance of counsel, Brady, and other newly discovered evidence claims in capital cases); Ragsdale, 720 So.2d at 207 (recognizing that this Court has encouraged trial courts to hold evidentiary hearings on postconviction motions). Based upon our review, we find that Floyd set forth a sufficient factual basis for relief which was not conclusively refuted by the record.[15] Accordingly, the trial court should have held an evidentiary hearing on these claims of ineffectiveness of counsel.

BRADY CLAIM
Floyd also asserted in his postconviction motion that the State withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As previously stated, a postconviction defendant is entitled to an evidentiary hearing unless the motion and record conclusively demonstrate that the defendant is entitled to no relief. See Fla. R.Crim. P. 3.850(d); Gaskin, 737 So.2d at 516. Floyd contends that the trial court should have held an evidentiary hearing on his Brady claim. We agree. Based upon our review, we conclude that Floyd was entitled to an evidentiary hearing on this claim because the record did not conclusively refute Floyd's factual allegations that the State withheld exculpatory evidence in violation of Brady.[16]

HABEAS CORPUS
Appellate counsel's ineffectiveness is appropriately raised in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). In order to grant habeas relief on the basis of ineffectiveness of appellate counsel, this Court must determine
whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981).
First, Floyd contends that appellate counsel was ineffective for failing to raise on direct appeal the prejudicial error caused by the admission of gruesome and inflammatory autopsy photographs. This *184 Court has stated that the admission of photographic evidence of a murder victim is within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent abuse. See Gudinas v. State, 693 So.2d 953, 963 (Fla.1997); Pangburn v. State, 661 So.2d 1182, 1187 (Fla. 1995). "While a trial court should exercise caution in admitting particularly gruesome photographs, and in limiting their numbers, such photographs may still be relevant." Larkins v. State, 655 So.2d 95, 98 (Fla.1995). This Court has upheld the admission of photographs where they are relevant to "explain a medical examiner's testimony, to show the manner of death, the location of wounds, and the identity of the victim." Id. at 98.
In this case, the State sought to introduce a group of autopsy photographs during the medical examiner's testimony at the guilt phase of Floyd's trial. Ultimately, two autopsy photographs depicting stab wounds to the victim's abdomen and upper chest were admitted into evidence. The record reflects that the trial court sustained trial counsel's objection as to the autopsy photographs depicting various internal organs. Further, the record demonstrates that trial counsel acquiesced in the trial court's decision to permit the State to introduce the two photographs depicting the victim's stab wounds. Thus, this issue was not preserved for appeal. Even assuming the issue was preserved, we find the trial court did not abuse its discretion in admitting the photographs into evidence because they were relevant to show the circumstances of the crime and the nature and extent of the victim's injuries. See Rutherford v. Moore, 774 So.2d 637, 647 (Fla. 2000); Larkins, 655 So.2d at 98. Accordingly, appellate counsel was not ineffective for failing to raise this claim.
Next, Floyd asserts that appellate counsel was ineffective for failing to argue on appeal several instances of prosecutorial misconduct during the guilt phase and resentencing. First, Floyd alleges that the State improperly elicited testimony from the medical examiner about vaginal washings taken from the victim, thereby implying that a sexual crime had occurred. The record reveals that trial counsel did object to the medical examiner's testimony and moved for a mistrial on the grounds that the testimony was excessively prejudicial since there was no suggestion of a rape in the case. The trial judge denied the motion for mistrial and instructed the State to adhere to questioning the medical examiner about the blood samples. While trial counsel's objection clearly preserved this issue for appeal, this issue is without merit. The record reveals that the State did not elicit testimony from the medical examiner as to vaginal washings, nor suggest that the victim suffered a sexual battery. Further, the medical examiner's inadvertent and unsolicited reference to vaginal washings did not undermine the fairness of Floyd's trial. Thus, appellate counsel cannot be faulted for not raising this issue which would have failed on appeal. See Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994); see also Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla. 1999).
Floyd also argues that the State asked improper questions regarding his reaction to being booked on the forgery charge and regarding whether he was cooperative in providing blood and hair samples. The record reveals, however, that the trial court sustained trial counsel's objections in both instances. Indeed, the trial court struck Detective Totz's testimony pertaining to Floyd's reaction to being booked on the forgery charged and instructed the jury to disregard it. Similarly, *185 the trial court sustained trial counsel's objection to the State's question regarding whether Floyd was cooperative in providing blood and hair samples prior to the witness answering the question. Thus, appellate counsel was not ineffective for failing to raise these issues on appeal.
Floyd also contends that the State elicited improper opinion testimony from Detectives Engelke and Bosse. Although trial counsel's objection in both instances preserved these issues for appeal, appellate counsel does not have to raise every possible argument on appeal to be effective. See Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989). Indeed, Floyd's claim regarding Bosse's testimony concerning a visual comparison between the tire tracks found at the scene and the tire tread on Floyd's motorcycle would have been rejected. See Peacock v. State, 160 So.2d 541, 542-43 (Fla. 1st DCA 1964) (visual comparison of casts of tire prints from victim's property with tires of defendant's car was one upon which deputy sheriff was qualified to testify under the facts presented, leaving to the jury the determination of credibility and weight to be given to that testimony). More importantly, it cannot be said that the failure to raise either of these issues compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. See Pope, 496 So.2d at 800. Therefore, appellate counsel was not ineffective for failing to raise these issues on appeal.
In addition, Floyd maintains that the State argued lack of remorse as improper nonstatutory aggravation. Trial counsel did not object to the alleged improper comment; therefore, this issue was not preserved for appeal. Even if appellate counsel had raised this issue on appeal we would have concluded that the prosecutor's isolated reference to Floyd's lack of remorse during the State's closing argument constituted harmless error. See Shellito v. State, 701 So.2d 837, 842 (Fla. 1997) (finding brief reference to lack of remorse constituted harmless error); Wuornos v. State, 644 So.2d 1000, 1010 (Fla.1994) (same). Thus, appellate counsel was not ineffective for failing to raise this issue on appeal. See Kokal v. Dugger, 718 So.2d 138, 143 (Fla.1998).
Next, Floyd asserts that comments by the state attorney and instructions given by the trial court unconstitutionally and inaccurately diluted the jury's sense of responsibility for sentencing, and that appellate counsel was ineffective for failing to raise this issue on appeal. First, Floyd contends that the jury was repeatedly instructed by the court and the prosecutor that its role was merely advisory. Trial counsel did not object to the characterization of the jury's role; therefore, this issue was not preserved for appeal. Moreover, this Court has repeatedly rejected this issue as being without merit. See Teffeteller, 734 So.2d at 1026; Sochor v. State, 619 So.2d 285, 291 (Fla.1993). Appellate counsel's failure to raise non-meritorious issues does not constitute ineffective assistance. See Groover v. Singletary, 656 So.2d 424, 425 (Fla.1995).
Within this issue, Floyd also argues that the trial court misled the jury as to the vote required for a life recommendation, thereby rendering his death sentence fundamentally unfair.[17] We recognize the *186 second sentence and concluding sentence of the instruction were inconsistent with the directions contained within the body of the instruction. However, the trial court did properly instruct the jury that if six or more jurors recommended life, the jury had made a life recommendation. Indeed, the body of the instruction was correct and there is nothing in the record to suggest that the jury was confused by the instruction. Further, the jury in this case voted eight to four to recommend death. In view of the jury's vote, we find no prejudice. See Harich v. State, 437 So.2d 1082 (Fla.1983) (finding no prejudice in case with similar jury instruction where jury recommended death by a vote of nine to three and there was nothing in the record to show jury was confused by instruction). Thus, appellate counsel was not ineffective for failing to raise this issue on appeal.
Next, Floyd argues the penalty phase jury instructions improperly shifted the burden to him to prove that a life sentence would be appropriate, and appellate counsel was ineffective for failing to raise this issue on appeal. This issue was not properly preserved for appeal. Moreover, this Court has consistently held that the burden shifting argument is without merit. See Demps v. Dugger, 714 So.2d 365, 368 (Fla.1998); Johnson v. State, 660 So.2d 637, 647 (Fla.1995). Appellate counsel's failure to raise nonmeritorious issues does not constitute ineffective assistance. See Groover, 656 So.2d at 425.
Floyd also asserts that appellate counsel was ineffective for failing to challenge the adequacy of the jury instructions defining the aggravating circumstances in this case. Floyd did not object to either the murder in the course of a felony or the financial gain jury instruction at resentencing. Thus, Floyd's claim as to the jury instructions for these two aggravating circumstances was not preserved for appeal. Appellate counsel cannot be ineffective for failing to raise an issue not properly preserved for appeal. See Johnson v. Singletary, 695 So.2d 263, 266-67 (Fla.1996); Groover, 656 So.2d at 425. Further, the record reflects that the trial court gave the standard jury instruction as to these two aggravating circumstances and instructed the jury that these aggravating circumstances should be merged if the jury determined the State proved both beyond a reasonable doubt. Floyd's argument that the murder in the course of a felony aggravating circumstance is an unconstitutional automatic aggravator has been rejected by this Court and is without merit. See Blanco v. State, 706 So.2d 7, 11 (Fla.1997); Johnson, 660 So.2d at 647.
*187 In addition, Floyd argues that the HAC instruction given in his case was unconstitutionally vague and overbroad in violation of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). This Court has held that a defendant must do the following two things to preserve an Espinosa claim for postconviction review: (1) trial counsel must preserve the issue for appellate review by objecting to the jury instructions on vagueness grounds or by submitting an alternative instruction; and (2) appellate counsel must raise the issue on appeal. See Downs v. State, 740 So.2d 506, 517 (Fla. 1999); Lambrix v. Singletary, 641 So.2d 847, 848 (Fla.1994). In this case, the record reflects that the trial court granted trial counsel's request for an enhanced instruction on the definition of HAC. Trial counsel made no additional objection to the instruction and appellate counsel did not challenge any aspect of the instruction on appeal. Thus, Floyd's challenge is procedurally barred. See Doyle v. Singletary, 655 So.2d 1120, 1121 (Fla.1995).
Even if the challenge were not procedurally barred, Floyd's argument would be without merit. The enhanced instruction submitted by trial counsel and given by the trial court contained the language deemed so critical to the validity of the aggravator in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). See State v. Breedlove, 655 So.2d 74, 76 (Fla.1995). Moreover, we upheld the finding of HAC in Floyd's appeal after resentencing. See Floyd, 569 So.2d at 1232. Thus, to the extent the instruction could be deemed lacking, any error was harmless. Accordingly, appellate counsel was not ineffective for failing to raise this issue since this Court would have rejected Floyd's Espinosa claim on appeal. See Doyle, 655 So.2d at 1121; Lambrix, 641 So.2d at 849.
Lastly, Floyd asserts that appellate counsel was ineffective for failing to argue on appeal that Florida's capital sentencing statute is facially unconstitutional because the aggravating factors are vague and overbroad. This issue has been decided adversely to Floyd's position and therefore is without merit. See, e.g., Fotopoulos v. State, 608 So.2d 784, 794 (Fla.1992). Accordingly, appellate counsel was not ineffective for failing to raise this issue on appeal.
In conclusion, we affirm in part and reverse in part the trial court's summary denial of Floyd's motion for postconviction relief and remand this case for the trial court to conduct an evidentiary hearing as outlined above. We deny Floyd's petition for writ of habeas corpus.
It is so ordered.
SHAW, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
WELLS, C.J., dissents with an opinion, in which HARDING, J., concurs.
HARDING, J., dissents with an opinion, in which WELLS, C.J., concurs.
QUINCE, J., recused.
WELLS, C.J., dissenting.
I do not join the majority because I conclude that the trial court's order delineates reasons why each of the points raised by appellant could be properly denied. The trial court's decision was permitted by the version of Florida Rule of Criminal Procedure 3.851 which was in effect at the time the motion in this case was decided. The majority erroneously relies upon my concurring opinion in Mordenti v. State, 711 So.2d 30 (Fla.1998), issued May 28, 1998, which advocated a change in rule 3.851, but the rule had not been changed at the time the trial judge ruled on this motion on July 21, 1999. The *188 trial court was quite correct to rely on this Court's decision in LeCroy v. Dugger, 727 So.2d 236 (Fla.1998), which was also released after this Court's decision in Ragsdale v. State, 720 So.2d 203 (Fla.1998), another case upon which the majority inappropriately relies.
In this case, the trial court entered a detailed order, which I find necessary to set out in pertinent part to understand my decision:
Procedural History
Defendant, James Floyd, was indicted March 6, 1984, in case number CRC 84-00589CFANO and charged with the first-degree stabbing murder of Annie Barr Anderson. Defendant was also charged by information in case number CRC 84-00578CFANO with six counts of grand theft, forgeries and uttering forged checks arising from Defendant's stealing the victim's checks at the time of the murder. The State moved to consolidate the cases and the motion was granted April 19, 1984.
On March 12, 1984, Martin Murry, Esquire was appointed by the court to represent the Defendant. Mr. Murry took over the case from a previously court-appointed attorney and represented the Defendant in the trial of this matter. Defendant was found guilty as charged by the jury verdict in August of 1984 and was sentenced to death on August 27, 1984 in accord with the jury's recommendation. On appeal to the Florida Supreme Court, the judgment of guilt was affirmed, but Defendant's sentence was vacated and remanded back to the trial court for resentencing. Floyd v. State, 497 So.2d 1211 (Fla.1986).
Robert Love, Esquire was appointed to represent the Defendant on February 12, 1987. Defendant's resentencing took place on January 12-14, 1988, resulting in a second jury recommendation that the Defendant be sentenced to death. On February 29, 1988, the Court, following the jury's recommendation, again sentenced the Defendant to death. The Florida Supreme Court affirmed the death sentence and the mandate of that decision was filed January 22, 1991. Floyd v. State, 569 So.[2d] 1225 (Fla. 1990).
Defendant's initial Motion to Vacate was timely filed on August 18, 1992 but asked for leave to amend and was not properly verified. After several amendments to Defendant's Motion, public records requests and other reasons for continuance or delay, the Court found, on September 15, 1998 that there was substantial compliance with all records requests and gave the Defendant until November 13, 1998 to file his fourth Amended Motion to Vacate. The Defendant filed his fourth Amended Motion to Vacate, but again requested leave to amend. This Court's March 20, 1998 Order Denying Defendant's "Third" (sic) Amended Motion to Vacate Judgments of Conviction and Sentence in Part and Order to Show Cause denied that part of the Defendant's motion seeking leave to amend, along with several other of the Defendant's claims (See Exhibit "A").
. . . .
Ineffective Assistance of Counsel during Penalty Phase (Defendant's Claim II)
Defendant's counsel during the second Penalty Phase was Robert Love, Esquire. Defendant alleges Mr. Love was ineffective as penalty phase counsel by failing to adequately investigate and prepare mitigating evidence, specifically evidence of Defendant's alleged "mental retardation, intoxication and history of severe substance abuse." Defendant's motion additionally alleges that more of Defendant's personal history and upbringing, *189 particularly his mother's alcoholism should have been presented in mitigation. Because of counsel's alleged deficient performance, Defendant asserts that his death sentence is unreliable.
A motion for postconviction relief can be denied without an evidentiary hearing when the motion and the record conclusively demonstrate that the movant is entitled to no relief. Lecroy[LeCroy] v. Dugger, 727 So.2d 236, 239 (Fla.1998). In alleging a claim of ineffective assistance of counsel, the Defendant must meet the burden of satisfying two general components. Lecroy[LeCroy], 727 So.2d at 239 (citing Strickland v. Washington, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) and Maxwell v. Wainwright 490 So.2d 927 (Fla.1986)).
First a claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined A court considering a claim of ineffective assistance of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Id.
As the State summarized in its Response, Defendant's counsel at the penalty phase presented seven defense mitigation witnesses. (See Attached Exhibit "B," portions of the transcript from the second penalty phase). The theme of Defendant's mitigation evidence was that the Defendant was basically a good, responsible, nonviolent person, with a solid work record, who came from a troubled home (because of his mother's alcoholism) and that he fell apart after the death of his father, possibly becoming involved in drugs. (See Exhibit B). Additionally, during the first penalty phase, the State introduced letters from the Defendant to the victim's daughter. (See Attached Exhibit "C").
the Court finds that this evidence refutes Defendant's ineffective assistance claim, in that the Defendant has not made a showing of prejudice. First much of the evidence that the Defendant claims was not included, i.e., his troubled home life because of his mother's alcoholism and then later his father's death, was in fact presented on the Defendant's behalf in mitigation. Also, the Defendant's mitigation evidence did include the fact that the Defendant may have turned to drug and alcohol substance abuse after his father's death. (Exhibit B, testimony of Rex Estelle). Second, the evidence presented during the penalty phase is inconsistent with, and directly refutes, Defendant's current claims of mental illness or retardation. (Exhibits B and C). This Court finds the authorities of LeCroy v. Dugger, 727 So.2d 236 (Fla.1998), and Mendyk v. State, 592 So.2d 1076, 1079 (Fla.1992), persuasive in this matter. In both cases, the quantum and quality of the proffered evidence in the defendants' postconviction motions did not meet the showing of prejudice necessary even to warrant an evidentiary hearing on the alleged ineffectiveness of counsel in presenting mitigation evidence. LeCroy, 727 So.2d at 239-40; Mendyk, 592 So.2d [at] 1079-80. Accordingly the Court denies the Defendant relief with regard to his Claim II and Claims XV and XVII, which the Court previously found subsumed within Claim II.
*190 Ineffective Assistance of Counsel During Voir Dire (Defendant's Claim III)
Defendant alleges he was denied effective assistance of counsel during voir dire because his counsel failed to object to the State's explanation for using a peremptory challenge to remove an African American individual from the jury during Defendant's second sentencing hearing. The prosecutor gave an explanation that was inaccurate and also argued that no explanation was necessary. However, the prosecutor's innocent mistake has never been alleged to have been made in bad faith. Regardless of the mistake, the Court finds that Defense counsel's performance was not ineffective judged in light of the law in effect at the time of the second sentencing hearing.
The prosecutor's response to Defense counsel's objection to the State's use of a peremptory challenge for the only remaining black juror reflected the state of the law at the time the exchange took place in January of 1988. The State advised the court that case law did not require a reason for a peremptory challenge to a black person unless the party objecting made a showing of a systematic exclusion of blacks. (See Exhibit "D," record excerpt)
The Court finds that, at the time of the second penalty phase, the test for requiring a reason for a peremptory challenge was that set forth in State v. Neil, 457 So.2d 481, 486 (Fla.1984). The test at the time was as follows: (1) the objecting party must demonstrate on the record that the challenged persons are members of a distinct racial group and (2) that there is a strong likelihood that the person has been challenged solely because of race. Neil, 457 So.2d at 486. If the "strong likelihood" prong was not satisfied, no inquiry may be made of the person exercising the questioned peremptory. Id. Accordingly, Defense counsel was not ineffective for accepting, as the current state of the law, the prosecutor's assertion that he did not have to explain himself for having made only one peremptory challenge of an African American. Neil, 457 So.2d at 486; Mills v. State, 507 So.2d 602, 605 (Fla.1987).
Ineffective Assistance of Counsel for Failing to Request Additional Peremptory Challenges (Defendant's Claim IV)
Defendant alleges that his trial counsel was ineffective for failing to request additional peremptory challenges during Defendant's resentencing proceeding. Defendant bases this claim on language in the appellate decision of this matter finding that counsel had failed to preserve the issue for appellate review. As the State points out, however, the Florida Supreme Court also noted that the Defendant had failed to show that any juror, unacceptable to him, served on the jury. Floyd v. State, 569 So.2d 1225, 1230 (Fla.1990). Accordingly, the Court finds the Defendant's claim IV too speculative to sustain Defendant's burden to show prejudice pursuant to the second prong of the Strickland test. Strickland v. Washington, 466 U.S. 668, 687[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (Fla. 1984).

Brady Claim (Defendant's Claim V)
Defendant alleges that the State perpetrated Brady v. Maryland violations against the Defendant during the guilt phase of his trial. Specifically, the Defendant raises three subissues in this regard.
A. Alleged Failure to Disclose Eyewitness Information of Other Suspects

*191 Defendant's motion alleges that an unnamed witness saw "several white men force their way into the victim's house" on the day that the victim died and further asserts that "[t]his witness was shown a photo lineup and identified two men who she saw at the victim's house that day. One of the men this witness identified was known by police to be bilking elderly women out of money and had forged checks." However the police report Defendant is relying on for this information specifically states that the witness did not identify any suspect when shown the photopak. (See Exhibit "E," Supplemental Report Offense # 5550, 1/19/84, of Detective Gatchel).
The Florida Supreme Court has established a four-prong test that a defendant must meet in order to establish a Brady violation:
(1) that the State possessed evidence favorable to him;
(2) that he did not possess the favorable evidence nor could he obtain it with any reasonable diligence; (3) that the State suppressed the favorable evidence; (4) that had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different.

Hildwin v. Dugger, 654 So.2d 107, 109 (Fla.1995).
As to the existence of other possible suspects, the Defendant has failed to show or allege that prior trial counsel did not possess this evidence or could not have obtained it with any reasonable diligence through a public records request. Further, Defendant has not demonstrated that this evidence was favorable to him. Police investigation of other suspects is not automatically favorable to the Defendant. Spaziano v. State, 570 So.2d 289, 291 (Fla.1990). Defendant has not established that the State suppressed this information.
Finally, the record refutes any claim by the Defendant that there is a reasonable probability that the outcome of the proceedings would have been different. The Court specifically finds that the following evidence, admitted at trial, effectively refutes such a reasonable probability:
1. The refutation of the Defendant's original alibi;
2. Motorcycle tracks consistent with Defendant's Kawasaki motorcycle found January 17, 1984 in the victim's driveway;
3. A sock with bloodstains, consistent with victim's blood and not with the Defendant's blood, found in Defendant's jacket pocket at the time of his arrest;
4. Eight Negroid hairs found from the sweepings of the victim's clothing and bed;
5. Defendant's possession of the victim's checkbook;
6. Defendant's arrest while cashing one of the victim's forged checks at the victim's bank; and
7. Defendant's admission of the robbery and murder cellmate Gregory Anderson.
(For Record cites See Attached Composite Exhibit "F," State's Response with Exhibits pp. 27, 29-30, 39-40-43).
B. Alleged Failure to Disclose Huie Byrd's "Deceptive Responses" on a polygraph examination
Defendant describes Huie Byrd as the man who was with Defendant when he was arrested. Defendant's motion claims that information about Mr. Byrd's polygraph test results was admissible in the penalty phase and was wrongfully withheld by the State. However, *192 the record conclusively refutes that this information was withheld. Instead, Defendant's trial counsel, Mr. Murry, discovered this information during the Deposition of Detective Crotty, the assisting case detective, on August 7, 1984. (See Composite Exhibit "F" p. 33). Accordingly, on this subissue there was no Brady violation and the Court need not address the issue of whether or not this information would even have been admissible during Defendants's penalty phase.
C. Alleged Failure to Disclose Impeachment Evidence about Gregory Anderson
Greg Anderson was a former cellmate of the Defendant's who testified about admissions the Defendant made to him regarding the murder and robbery. Defendant's claim in this regard is not specific enough to be sufficiently analyzed under the Brady four-prong standard and thus is also without merit.
Ineffective Assistance of Counsel during Pretrial and Guilt Phase (Defendant's Claim VI)
Martin Murry was Defendant's original trial counsel. Mr. Murry, who was diagnosed with a malignant melanoma, died in February of 1998. Defendant alleges that his pretrial and guilt phase attorney, Martin Murry "did no preparation" on his case prior to trial. This claim is conclusively refuted by the record. (See for Example Composite Exhibit "F" p. 33 and citation to record regarding Mr. Murry's deposition of Detective Crotty). Other sections of the record entirely refuting Defendant's claim of ineffective assistance of counsel as to Mr. Murry are those portions of the record where Mr. Murry skillfully cross-examined witnesses regarding the circumstantial evidence against the Defendant (See Composite Exhibit F pp. 42-43 and record cites) and Mr. Murry's scathing cross-examination of Gregory Anderson (See Supplemental Exhibit to Composite Exhibit F). Defendant makes much of the fact that Mr. Murry's file was never found or disclosed to CCR counsel, but fails to even allege that CCR made a due diligence effort to locate the file.
Defendant relies on Mr. Murry's disbarment in 1988, for matters occurring in 1987, to claim that Defendant failed to prepare Defendant's case in 1984. Defendant entirely fails to demonstrate, however, that Mr. Murry's problems in 1987 and 1988 had any bearing on Defendant's trial several years earlier in 1984. Accordingly, Defendant's claim in this regard fails to satisfy either prong of the Strickland test.
Defendant also mischaracterizes Mr. Murry's opening by stating that Murry promised to put on fourteen (14) witnesses on Mr. Floyd's behalf. As the State points out, Mr. Murry actually said "... On a witness-to-witness basis, I'm going to show you through 14 people that there is no basis for you to find him guilty in the first-degree." (See Composite Exhibit F p. 38 and record cite therein). When the direct quote is revealed, it is apparent that Mr. Murry's opening statement in this regard was directed at all the witnesses that would appear at trial, both Defense and Prosecution. Accordingly, Defendant['s] ineffectiveness claim in this regard fails to satisfy either prong of the Strickland test.
Defendant further alleges that his trial counsel was ineffective for failing to cross-examine State witnesses Jay Warthen, Jr.; Gloria McManus; Edmund Lopus; Zelma Ravenel; Kenneth Williams; John James Buggle; and Michael Kepto. The substance of these *193 witnesses' testimony is summarized in the State's Response to Order to Show Cause (Composite Exhibit F, pp. 39-41.) With the exception of Reverend Warthen, who testified briefly about his identification of the victim, the above-named witnesses testified about Defendant's forgeries of the victim's checks and his apprehension at the bank. As the State notes, the Defendant, in his opening statement admitted to the forgeries, but said that he found the checks at a gas station. Defendant's motion fails to allege anything that could have been accomplished from cross-examining the named witnesses. Accordingly, the Defendant has failed, on this subissue, to satisfy his burden of showing that, but for trial counsel's alleged deficiency, the outcome of the matter would have been different.
Defendant next claims that trial counsel was ineffective for failing "to obtain the services of a hair analyst and blood expert to rebut the State's evidence." The Court finds however, that trial counsel aptly cross-examined the State's witnesses regarding bloodstains and the sock found in the Defendant's possession and the hairs found at the crime scene. (See Composite Exhibit F, pp. 42-43). This record does not reflect deficient performance from trial counsel's failure to call additional expert witnesses to elaborate on what the State's experts had already admitted on cross-examination. How these experts could have been impeached is not suggested, and the record presents no need for impeachment in light of the admitted inconclusive findings of the State's experts. Accordingly, Defendant's allegations fail to satisfy the Strickland test and do not warrant an evidentiary hearing.
Finally, Defendant alleges that trial counsel failed to seek a mental health examination of the Defendant prior to trial. As noted with regard to Claim II, the alleged mental retardation of the Defendant is refuted on this record. Further, diminished mental capacity is inadmissible to disprove the specific intent or state of mind required for proof of a criminal offense. Chestnut v. State, 538 So.2d 820 (Fla.1989). Thus, Defendant's allegations in this regard also fail to meet the burden of showing prejudice pursuant to the Strickland test.
State v. Floyd, Nos. CRC84-00578 CFANO and CRC 84-00589 CFANO, order at 2-3, 4-12 (Fla. 4th Cir. Ct. order filed June 22, 1999) (footnote omitted).
In the face of these detailed reasons for the summary denial of appellant's motion, I do not believe there is a sufficient basis to reverse the trial court on general statements that we have urged evidentiary hearings in other cases or that the rule be amended. It appears to me that the trial judge's reasons for the denial adequately cover why the allegations of the motion did not state a basis for an evidentiary hearing, and the trial judge's order should not be reversed.
HARDING, J., concurs.
HARDING, J., dissenting.
I respectfully dissent. I would affirm the trial court's denial of Floyd's postconviction motion for the reasons expressed in Chief Justice Wells' dissenting opinion. Based on my review of the trial court's order, it is clear that the trial court did exactly what rule 3.851 and this Court's cases require. The majority opinion provides very little explanation or justification for reversing that well-reasoned order.
WELLS, C.J., concurs.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] The trial court found the following aggravating circumstances: (1) the murder was committed during a burglary; (2) the murder was committed to avoid or prevent a lawful arrest; (3) the murder was committed for pecuniary gain; (4) the murder was heinous, atrocious, or cruel; and (5) the murder was committed in a cold, calculating, and premeditated manner. See id. at 1213.
[3] The trial court found that (1) the murder was committed for pecuniary gain and (2) the murder was heinous, atrocious, or cruel. See Floyd v. State, 569 So.2d 1225, 1229 (Fla. 1990).
[4] Floyd raised the following claims: (1) public records were being withheld in violation of chapter 119, Florida Statutes (1997); defense counsel provided ineffective assistance during the penalty phase; (3) counsel provided ineffective assistance during voir dire; (4) counsel was ineffective in failing to request additional peremptory challenges; (5) the State withheld evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (6) counsel was ineffective during the guilt phase; (7) the penalty phase jury instructions improperly shifted the burden to the defense and counsel was ineffective in failing to object; (8) the jury instructions on the aggravating circumstances of murder in the course of a felony, pecuniary gain, and heinous, atrocious, or cruel were improper; (9) the trial court erred in finding that the murder was heinous, atrocious, or cruel; (10) Florida's capital felony sentencing law setting forth aggravating circumstances is vague and overbroad; (11) the aggravating circumstances as applied and argued were vague and overbroad; (12) the jury was misinformed as to its advisory role and given erroneous instructions by the trial court; (13) the trial court failed to find mitigation supported by the record; (14) the trial court gave improper consideration to victim impact evidence; (15) the ineffectiveness of counsel denied Floyd his right to adequate mental health assistance under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (16) the prosecutor made improper arguments and engaged in other misconduct; (17) defense counsel was ineffective in failing to investigate and present evidence of Floyd's good prison record; (18) execution by electrocution is cruel or unusual punishment or both; and (19) the cumulative effect of the substantive and procedural errors deprived Floyd of a fair trial and sentencing.
[5] Huff v. State, 622 So.2d 982 (Fla.1993).
[6] The trial court summarily dismissed claims 1, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, and 19 as either procedurally barred, subsumed by other claims, or without merit.
[7] The claims subject to the show cause order were claims 2, 3, 4, 5, 6, and 16.
[8] Floyd's claims are (1) the trial court erred in summarily denying Floyd's ineffective assistance of counsel claims; (2) the trial court erred in summarily denying Floyd's claim alleging a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (3) the trial court erred in denying Floyd's motion to disqualify the trial judge; (4) the trial court erred in denying Floyd's claim that the sentencing judge failed to find mitigation; (5) the trial court erred in denying Floyd's claim of prosecutorial misconduct; (6) the trial court erred in denying Floyd's claim that he was denied access to public records; (7) the trial court erred in denying Floyd's jury instruction claims; and (8) the trial court erred in denying Floyd's claim that Florida's death penalty statute is unconstitutional.
[9] We find issues (5), (7), and (8) to be procedurally barred because they could have been raised on direct appeal. See Harvey v. Dugger, 656 So.2d 1253 (Fla.1995). Moreover, this Court has rejected the argument that Florida's capital sentencing scheme is unconstitutional. See Fotopoulos v. State, 608 So.2d 784, 794 (Fla.1992). In addition, we find issue (4) to be procedurally barred because it was raised on direct appeal. See Floyd, 569 So.2d at 1233. Likewise, Floyd's assertion within issue (7) that there was insufficient evidence to support a finding of HAC is procedurally barred because it was raised on appeal. See id. at 1232.
[10] Interjected within issues (5) and (7) are claims based on ineffective assistance of counsel for failure to raise an appropriate objection or otherwise preserve the issue for appellate review. We find these allegations legally or facially insufficient to warrant relief under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Contrary to Floyd's assertion within issue (5), the State did not argue during resentencing that the CCP aggravating circumstance was applicable to the case, nor was the jury instructed on CCP. Further, Floyd has failed to demonstrate prejudice as a result of the State's isolated reference to lack of remorse during closing argument and comments regarding the victim. Additionally, several of the substantive issues raised within issue (7) are without merit as a matter of law. See Harvey, 656 So.2d at 1257 n. 5 (rejecting claim that penalty phase jury instructions improperly shifted the burden to defendant); Kelley v. Dugger, 597 So.2d 262, 265 (Fla.1992) (rejecting claim that pecuniary gain aggravator is unconstitutionally vague); Turner v. Dugger, 614 So.2d 1075, 1079 (Fla.1992) (finding Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), does not control Florida law on capital sentencing). Moreover, "[w]hen jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel." Mendyk v. State, 592 So.2d 1076, 1080 (Fla. 1992), receded from on other grounds, Hoffman v. State, 613 So.2d 405 (Fla.1992).
[11] We find issues (3) and (6) to be without merit. In issue (3), Floyd argues the trial court erred in denying his motion to disqualify the trial judge. Floyd, however, has failed to establish a well-grounded fear that he would not receive a fair hearing. Thus, the trial court did not err in denying Floyd's motion. See Correll v. State, 698 So.2d 522, 524 (Fla.1997); Quince v. State, 592 So.2d 669, 670 (Fla.1992). Likewise, Floyd's claim that the trial court erred in denying his claim that he was denied access to public records is without merit. The record reflects that the public records requested by Floyd were made available to him. Further, the record reveals that the trial court performed an in-camera inspection of the documents which were withheld by the State pursuant to specific statutory exemptions. See Ragsdale v. State, 720 So.2d 203, 206 (Fla.1998). The trial court determined that these documents were properly withheld from public records disclosure, and Floyd does not challenge the validity of the trial court's order upholding the claimed exemptions.
[12] In Floyd's 3.850 motion, he alleged that the following information was available had trial counsel conducted an adequate investigation of mitigating circumstances: intoxication at the time of the offense; history of severe substance abuse, including quaaludes, marijuana, and huffing kerosene; deprived and emotionally abusive childhood; fetal alcohol syndrome; alcoholic mother; evidence that his father physically abused his mother; and school reports diagnosing him as mentally retarded at age fifteen with an IQ of 51. According to his motion, Floyd stated that he had been examined by a mental health expert who found that he is mentally retarded and suffers organic brain damage. Specifically, Floyd asserted the mental health expert determined that he has an IQ of 60 and the mental age of a ten-year-old child. It should be noted that the trial court in Floyd's case found two aggravating circumstances and no mitigating circumstances. See Floyd, 569 So.2d at 1229.
[13] Floyd's argument is twofold: (1) trial counsel was ineffective for failing to object to the State's explanation for using a peremptory challenge to remove an African American individual from the jury; and (2) trial counsel was ineffective for failing to request additional peremptory challenges after the trial court improperly refused to strike juror Hendry for cause.
[14] Specifically, Floyd alleges (1) trial counsel did no preparation for trial; (2) trial counsel failed to cross-examine numerous State witnesses on a circumstantial evidence case; (3) trial counsel failed to retain a hair analyst or blood expert; and (4) trial counsel failed to present even one defense witness, despite comments during opening statements that he would demonstrate Floyd's innocence through fourteen witnesses. Floyd also asserts that trial counsel's disbarment in 1988 supports his claim that trial counsel rendered ineffective assistance during the guilt phase.
[15] See notes 12, 13 and 14.
[16] Floyd alleges that the State withheld the following information: (1) a witness's statement that she saw several white men force their way into the victim's house around the time the State estimated the victim had died; (2) evidence that Huie Byrd, the man who accompanied Floyd when he was arrested, provided deceptive responses on his polygraph; and (3) evidence which would have been used to impeach Gregory Anderson, one of Floyd's former cellmates, who testified that Floyd confessed to the crime.
[17] The record reflects that the trial court gave the following instruction:

In these proceedings it is not necessary that the advisory sentence of the jury be unanimous. Your decision may be made by a majority of the jurors. The fact that the determination of whether a majority of you recommend a sentence [of death] or life sentence, of life imprisonment in this case, can be reached by a single ballot-can be reached by a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings.
... If a majority of the jury determines that James Floyd should be sentenced to death, your advisory sentence will be just that.
A majority of the jury, by a vote of seven or more, advises and recommends to the Court that it impose the death penalty against James Floyd. On the other hand, if by six or more votes the jury determines that James Floyd should not be sentenced to death, your advisory sentence would be life imprisonment without the possibility of parole for twenty-five years. In the event that there are six votes for the death penalty and six votes for life imprisonment without the possibility of parole for twenty-five years, the Court will deem that vote to be a recommendation for life without the possibility of parole for twenty-five years.
. . . .
Ladies and gentlemen, you will now retire to consider your recommendation. When seven or more are in agreement as to what sentence should be recommended to the Court, that form of recommendation should be signed by your foreman and returned to the Court.